Toni J. Jaramilla, Esq. (SBN 174625)
**TONI J. JARAMILLA, A Professional Law Corp.**
1900 Avenue of the Stars, Suite 900
Los Angeles, California 90067
Telephone: (310) 551-3020
Email: toni@tjjlaw.com

J. Bernard Alexander, III (SBN 128307)
John L. Schwab (SBN 307599)
**ALEXANDER MORRISON + FEHR LLP**
1900 Avenue of the Stars, Suite 900
Los Angeles, California 90067
T: (310) 394-0888 | F: (310) 394-0811
Emails: balexander@amfllp.com | jschwab@amfllp.com

Attorneys for Plaintiffs,
MARIAH HEREFORD, MONETT HEREFORD, RYAN
GADISON

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

| | |
|---|---|
| MARIAH HEREFORD, an individual; MONETT HEREFORD, an individual; and RYAN GADISON, an individual<br><br>    Plaintiffs,<br><br>    v.<br><br>CITY OF HEMET, a municipal entity; and DOES 1 through 25, inclusive,<br><br>    Defendants. | Case No.:<br><br>**COMPLAINT FOR**:<br><br>1.  Violation of Bane Civil Rights Act (Cal. Civil Code § 52.1)<br><br>2.  Violation of Ralph Civil Rights Act (Cal. Civil Code § 52.7)<br><br>3.  Assault and Battery<br><br>4.  Intentional Infliction of Emotional Distress<br><br>5.  False Arrest and Imprisonment<br><br>6.  Trespass to Chattels<br><br>7.  Negligence |

- 1 -

8. Deprivation of Civil Rights Based on Excessive and Unreasonable Use of Force, 42 U.S.C. § 1983

9. Deprivation of Civil Rights, *Monell* Claim for Municipal Liability, 42 U.S.C. § 1983

10. Deprivation of Civil Rights and Equal Protection – Unlawful Detention, Seizure, and Arrest, 42 U.S.C. § 1983

11. Deprivation of Civil Rights Based on Violation of the First Amendment (Freedom of Speech), 42 U.S.C. § 1983

**DEMAND FOR JURY TRIAL**

COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs MARIAH HEREFORD, MONETT HEREFORD, and RYAN GADISON, by and through their attorneys of record, complain and allege as follows:

## INTRODUCTION

1.      This is a civil rights and state tort action that seeks general damages from the City of Hemet ("CITY") and general and punitive damages from several individuals, for engaging in the senseless beating of two unarmed women, a man and their pets.

2.      Hemet Police Gang Officers ("Officers") observed an African American man, Plaintiff GADISON, driving a newer model 2020 Dodge Challenger in the opposite direction. Plaintiff GADISON was just blocks from the home of his fiancé, MARIAH HEREFORD, and her mother, MONETT HEREFORD, when Hemet Officers made a U-turn behind him. Upon Plaintiff GADISON's arrival in the driveway, Officers immediately pulled in behind him and initiated a traffic stop and questioned him as though he was guilty of some crime. With no reasonable suspicion or probable cause, the Hemet Officers asked Plaintiff for permission to search his vehicle. When Plaintiff GADISON refused, Officers forcibly removed him from his vehicle and began to aggressively handcuff and detain him.

3.      Plaintiff GADISON's fiancé MARIAH HEREFORD and her mother MONETT HEREFORD exited their home and began questioning the officers about their rough and unreasonable treatment of Plaintiff GADISON, and simultaneously began filming the officers' conduct, to which the Officers took offense.  In complete disregard for the rights of Plaintiffs, and in response to the Plaintiffs' efforts to create a video record of the Officers' misconduct, Plaintiffs' phones were struck from their hands and both MARIAH and MONETT HEREFORD were physically struck and beaten by male Hemet Officers who physically towered over

them. Adding insult to injury, the Officers then beat the Plaintiffs' pet dogs, despite the dogs being restrained by chains that prevented them from having the ability to reach the Officers. Plaintiffs seek substantial damages for the harm caused by Defendants' illegal, unconstitutional, senseless, unprovoked acts of detention, seizure, assault, battery, excessive force, false imprisonment and arrest of Plaintiffs.

## JURISDICTION AND VENUE

4.     This Court has original jurisdiction pursuant to 28 U.S.C §§ 1331 and 1343(a)(3)-(4) because Plaintiffs assert claims under the laws of the United States, including 42 U.S.C. § 1983, 1985, 1986, and 1988, and the First, Fourth, and Fourteenth Amendments of the United States Constitution. This Court has supplemental jurisdiction over Plaintiffs' claims arising under state law pursuant to 28 U.S.C §§1331,1343, and 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

5.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants reside in this district and all incidents, events, and occurrences giving rise to this action occurred in this district.

## PARTIES

6.     Plaintiff MARIAH HEREFORD ("MARIAH") is a 29-year-old African American woman who, at all relevant times mentioned herein, resided and continues to reside in the City of Hemet, County of Riverside, State of California.

7.     Plaintiff MONETT HEREFORED ("MONETT") is a 54-year-old African American woman who, at all relevant times mentioned herein, resided and continues to reside in the City of Hemet, County of Riverside, State of California. MONETT is MARIAH's mother.

8.     Plaintiff RYAN GADISON ("GADISON") is a 33-year-old African American male who, at all relevant times mentioned herein, resided and continues

to reside in the City of Hemet, County of Riverside, State of California. GADISON is MARIAH's fiancé.

9.     Plaintiffs MARIAH, MONETT, and GADISON are collectively referred to in this Complaint as "PLAINTIFFS."

10.     Defendant CITY OF HEMET ("CITY") is a California municipal corporation existing under the Constitution and laws of the State of California. CITY is a governmental subdivision of the State of California with the capacity to be sued. The Hemet Police Department ("HPD") is a local government entity and an agency of the CITY, and all actions of the HPD are the legal responsibility of the CITY. The CITY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and employees. At all relevant times mentioned herein, the CITY was responsible for assuring that the actions, policies, procedures, practices, and customs of its employees and agents, including the HPD and DOES 1 through 25, inclusive, complied with the laws of the United States and the State of California.

11.     PLAINTIFFS are informed and believe, and based thereon allege, that each of DOES 1 through 25, inclusive, were engaged in law enforcement as officers, chiefs, deputies, deputy sergeants, captains, lieutenants, and/or civilian employees, agents, and representatives of the CITY, and were acting in the course and scope of their employment at all times relevant to the acts and omissions herein alleged.

12.     PLAINTIFFS are unaware of the true names and capacities of Defendants sued herein as DOES 1 through 25, inclusive, and therefore sues these Defendants by such fictitious names. PLAINTIFFS will amend this Complaint to allege their true names and capacities when ascertained. As such, the DOE Defendants are sued in both their individual, personal, and official capacities.

13.     All of the acts complained of herein by PLAINTIFFS were performed

COMPLAINT AND DEMAND FOR JURY TRIAL

by Defendants by and through their authorized agents and employees, namely DOES 1 through 25, inclusive, whom at all relevant times mentioned herein, were acting within the course, purpose, and scope of said service and/or employment with the CITY. Moreover, the CITY ratified the conduct of DOES 1 through 25, inclusive, and all of the acts complained of herein. The CITY is liable for PLAINTIFFS' injuries under California law and under the doctrine of *respondeat superior*. Liability under California law for public entities and public employees is based upon California Government Code §§ 815.2 and 820.

14.    The CITY and DOES 1 through 25, inclusive, each of whom was acting as the agent of the other, are collectively referred to in this Complaint as "DEFENDANTS."

## FACTUAL ALLEGATIONS

15.    On the evening of March 31, 2021, GADISON, an African American male, was lawfully driving his 2020 Dodge Challenger vehicle down Oakland Avenue in the City of Hemet. Two Caucasian officers, members of the HPD "Gang Task Force,"[1] spotted GADISON driving his vehicle in the opposite direction, made a U-turn, and pulled in behind GADISON as he parked in the driveway of MARIAH and MONETT's home located on Oakland Avenue. GADISON and MARIAH are engaged to be married, with four minor children, ages three, five, eight, and nine.

16.    GADISON is not and was not ever a member of any criminal gang or organization. There were no indicators of GADISON having any gang affiliation, either on his person or based on indicia present on, around or in his vehicle. GADISON was simply driving home after a long, full day of work.  The HPD officers had no reasonable suspicion or probable cause to initiate a traffic stop of

---

[1] The City states on its website that the purpose of the task force is to "comb[at] criminal street gangs." *See* https://www.hemetca.gov/278/Gang-Task-Force.

COMPLAINT AND DEMAND FOR JURY TRIAL

GADISON. Based on the actions of the officers, the absence of reasonable suspicion or probable cause, GADISON was targeted because of the color of his skin and the fact that he was an African American male driving a "nice" car.[2]

17.     With squad car lights flashing, one HPD officer approached GADISON's vehicle and used a flashlight to peer inside, before initiating any verbal contact. One HPD officer initially claimed that GADISON had been stopped for not having a front license plate. One of the HPD officers then asked for permission to search GADISON's vehicle. GADISON refused.

18.     HPD officers then aggressively began to remove GADISON from his vehicle and arrest him, supposedly for having a suspended driver's license. By this artifice,  HPD officers used GADISON's unlawful arrest as justification to confiscate and then search his vehicle. GADISON's vehicle was ransacked and impounded, but no charges were filed against GADISON based on the search because nothing illegal was found:



*Photos of GADISON's Vehicle After the Search*

---

[2] "Race-based traffic stops turn one of the most ordinary and quintessentially American activities into an experience fraught with danger and risk for people of color." *See e.g.*, David A. Harris,  *Driving While Black: Racial Profiling on our Nation's Highways*, ACLU Special Report (June 1999), *available at* https://www.aclu.org/report/driving-while-black-racial-profiling-our-nations-highways.

COMPLAINT AND DEMAND FOR JURY TRIAL

19.     Prior to and during the unlawful detention and arrest of GADISON inside the driveway, MARIAH and MONETT began exercising their First Amendment rights by filming the HPD officers. As HPD officers aggressively removed GADISON from his vehicle, in an attempt to moderate the officers' use of excessive force, MARIAH and MONETT repeatedly told the HPD officers that they were being filmed. GADISON was physically pinned and handcuffed against his car, with his car door open. MARIAH and MONETT continued to remind the HPD officers that they were being filmed and that GADISON's minor children were present, panicked, crying and watching the treatment of their father.

20.     GADISON and the two HPD officers were separated by the open driver's side door, with MARIAH and MONETT filming from the opposite side of the door. After GADISON was handcuffed, an HPD officer moved around the open door to where MARIAH stood and aggressively threatened to arrest MARIAH and her mother MONETT for "obstructing justice," stating "I will take you to jail if you don't back up!" This threat was made even though MARIAH and MONETT were separated by the driver's side door and the two officers and were not in the immediate vicinity of the arrest.  Rather, both MARIAH and MONETT were on their private property, lawfully exercising their First Amendment right to film HPD officers' actions.

21.     Then, as one HPD officers physically pushed GADISON towards a squad car, a second HPD officer knocked MONETT's phone to the ground, invoking the excuse that she had somehow interfered with GADISON's arrest despite being on the opposite side of the driver's door. In fact, the HPD officer knocked MONETT's phone to the ground in retaliation for her persistent actions in continuing to film the HPD's acts of excessive force and to verbally protest the actions as unconstitutional.

22.     After MONETT, a 54-year-old woman, had her phone knocked to the

ground, she was man-handled, thrown up against GADISON's vehicle, and placed in severely tightened handcuffs.  MONETT's  hands were needlessly and forcefully shoved up against her back with the objective of causing pain and serious bodily injury.  Over MONETT's objection, male HPD officers engaged in an invasive full body "search and frisk," grabbing and probing MONETT between her legs and groin area, despite the presence of female officers fully capable of conducting a less offensive or invasive search of MONETT.  MONETT was ultimately arrested and placed inside a patrol car.



*Photo Depicting MONETT's Unlawful Arrest*

    23.    MARIAH stood in front of her home filming the HPD officers' acts of excessive force, and repeatedly asking whether the HPD officers had a search warrant, as HPD officers searched GADISON's vehicle without his permission. Observing this, a Caucasian HPD officer swiftly approached MARIAH, pushed her backward,  swatted at her and struck her phone out of her hand and physically knocked her to the ground.

    24.    The HPD officer roughly grab MARIAH by her hair, yanked her head back and slammed her face against the ground, multiple  times. When MARIAH pleaded for the HPD officer to let her go, his response was: "Shut your fucking mouth!" The HPD officer then hooked his fingers into the underside of MARIAH's jaw, as if she were a fish, and yanked her upward from the ground, both choking

and restricting her airway. MARIAH wailed in agony, causing her to lose consciousness several times. While she was on the ground motionless, MARIAH was handcuffed with her hands behind her, and due to her injuries, had to be assisted to the squad car.  MARIAH was hospitalized on the night of the incident and later treated and diagnosed with "closed head injury; left shoulder pain; low back pain; neck pain; [and] whiplash."

25.   Manhandling women was apparently not an aberration with HPD officers.  A fifty-four (54) year old grandmother, a twenty-nine (29) year old mother, neither of whom posed any threat.  It made no difference.  All the while the children screamed and cried as they watched their mother and grandmother being beaten.  The children repeatedly begged  HPD officers to please stop.  These heartless HPD officers were intent on treating these African American citizens as less than human.  Their pleas for mercy had no effect, made no difference.



*Photos Depicting MARIAH's Head Injury*

26.   MARIAH and MONETT had three  beloved pets who  were each attached to 4-foot chains that were tethered to their individual dog houses. The dogs barked feverishly at watching their owners being beaten, but they could not get loose from their dog houses and were outside the range of the HPD officers, who had every ability to simply avoid them. Hatefully, HPD officers approached "Blue"

COMPLAINT AND DEMAND FOR JURY TRIAL

and lifted him up by the collar and violently threw him to the ground. A second HPD officer used a baton to brutally beat their second dog, "Rocky," who required veterinary treatment.

27.     HPD officers summoned paramedics to the scene to provide emergency medical attention.  MONETT and MARIAH were neither offered nor did they receive any medical attention at the scene. In contrast, one of the HPD officers claimed to have suffered a "deep tissue wound" from his attack of one of the three dogs.  That officer is the only person who received medical attention after this parade of excessive force on innocent African American citizens.  GADISON and MARIAH were taken to jail. MONETT was issued a citation.  All this arising from HPD officers' insistence and machinations to justify performing an otherwise illegal search of an African American man's car, simply because he was African American.

28.     The physical and psychological terror inflicted upon PLAINTIFFS by the HPD has and continues to cause severe, irreparable emotional distress, rendering Plaintiffs unable and/or limited in their ability to function fully and normally in their daily lives.

## ADMINISTRATIVE EXHAUSTION

29.     Prior to initiating this lawsuit, on or about September 7, 2021, MONETT and MARIAH exhausted all administrative remedies by serving notices of claims for damages to the CITY in compliance with California Government Code section 910, both of which were rejected by a matter of law.

30.      Prior to initiating this lawsuit, on or about September 30, 2021, GADISON exhausted all administrative remedies by serving a notice of claim for damages to the CITY in compliance with California Government Code section 910, which was rejected by a matter of law.

//

COMPLAINT AND DEMAND FOR JURY TRIAL

**FIRST CAUSE OF ACTION**

Violation of Bane Civil Rights Act

(Cal. Civil Code § 52.1)

(PLAINTIFFS Against the CITY and DOES 1 through 25, inclusive)

31.     PLAINTIFFS re-allege and incorporate by reference the allegations contained in all previous paragraphs, as though fully set forth at length herein.

32.     The Tom Bane Civil Rights Act protects individuals from violence or threats of violence, coercion, or intimidation by any individual, corporation, or government entity against their body or property in the exercise or enjoyment of their civil rights, including rights secured by the U.S. Constitution, the California Constitution, and state or federal laws.

33.     At the time of this incident, PLAINTIFFS were engaging in their Fifth Amendment right to travel, First Amendment rights to free speech and assembly and petition, and Fourth Amendment right to be free from unlawful searches and seizures, detention, arrest, and unreasonable and excessive use of force by the HPD.

34.     The CITY, through the conduct of its employees and agents, including the HPD and DOES 1 through 25, inclusive, threatened and engaged in acts of violence against PLAINTIFFS and prevented PLAINTIFFS from exercising their civil rights, including but not limited to: (a) GADISON's Fifth Amendment right to travel; (b) racial profiling of GADISON for a pretextual traffic stop, and unlawfully searching his vehicle based on his race being African American; and (c) MARIAH and MONETT's First Amendment right to film HPD acts of excessive force and violence and other illegal conduct occurring on MARIAH and MONETT's property; (d) and falsely imprisoning and arresting all PLAINTIFFS, causing PLAINTIFFS to be unlawfully detained, beaten, and arrested, without reasonable suspicion or probable cause.

35.     The CITY, through the conduct of its employees and agents, including

the HPD and DOES 1 through 25, inclusive, and with threats, intimidation, and/or coercion, caused PLAINTIFFS to reasonably believe that by exercising their civil rights, that the CITY, through its employees and agents, including the HPD and DOES 1 through 25, inclusive, would commit violence against PLAINTIFFS, including inflicting physical injury to the point of death.

36.     The CITY, through the conduct of its employees and agents, including the HPD and DOES 1 through 25, inclusive, through its employees and agents, intended to deprive PLAINTIFFS of enjoyment of their right to travel, freely associate, and be free from unlawful searches, seizures, detention, arrest, and unreasonable and excessive use of force by the HPD.

37.     As a direct and proximate result of the unlawful conduct of the CITY and DOES 1 through 25, inclusive, PLAINTIFFS have and will continue to suffer economic, physical, and emotional pain. PLAINTIFFS are therefore entitled to general and compensatory damages according to proof at the time of trial.

38.     PLAINTIFFS are informed and believe and based thereon allege that the CITY and DOES 1 through 25, inclusive, and each of them by engaging in the aforementioned acts and/or in authorizing and/or ratifying such acts, engaged in willful, malicious, intentional, oppressive and despicable conduct, and acted with a conscious disregard for the rights of PLAINTIFFS, entitling PLAINTIFFS to an award of exemplary and punitive damages against all non-government entity defendants, including Defendants DOES 1 through 25, inclusive, in an amount to be determined at the time of trial.

39.     DEFENDANTS, and each of them, are liable to PLAINTIFFS for reasonable attorneys' fees and costs of suit pursuant to California Civil Code section 52.1(i) and California Code of Civil section 1021.5.

//

//

## SECOND CAUSE OF ACTION

Violation of Ralph Civil Rights Act

(Cal. Civil Code § 51.7)

(PLAINTIFFS Against the CITY and DOES 1 through 25, inclusive)

40.     PLAINTIFFS re-allege and incorporate by reference the allegations contained in all previous paragraphs, as though fully set forth at length herein.

41.     The Ralph Civil Rights Act makes it unlawful to subject individuals to violence or intimidation by threat of violence based on race.

42.         PLAINTIFFS are African American. The CITY, through the conduct of its employees and agents, including the HPD and DOES 1 through 25, inclusive, subjected PLAINTIFFS to violent conduct by, including but not limited to:

(a)     forcibly removing GADISON from his vehicle, detaining and placing him in handcuffs, and roughly pinning him against his vehicle;

(b)     swatting at MONETT, striking her phone from her hand; violently throwing her up against GADISON's vehicle; placing her in severely tightened handcuffs; painfully shoving her hands unnaturally upward against her back with the objective of causing physical pain; having male officers needlessly and forcibly grab and probe MONETT's vaginal area, rather than allowing a search to be performed by female offices; and roughly shoving MONETT into a squad car; and

(c)     striking MARIAH's phone out of her hand; knocking her to the ground; roughly grabbing her hair, yanking her head back and repeatedly slamming her face against the ground while yelling "shut the fuck up!"; having an officer hook his fingers under MARIAH's jaw to yank her up from the ground, restricting her airway, causing her to choke and lose consciousness several times; then detaining and

COMPLAINT AND DEMAND FOR JURY TRIAL

arresting MARIAH by placing her in severely tightened handcuffs, aggressively shoving her into a squad car and taking her to jail.

43.    The violent and intimidating conduct of the CITY and DOES 1 through 25, inclusive, was substantially motivated by PLAINTIFFS' race, as evidenced, in part, by the HPD's racial profiling of GADISON, including pretextually stopping him for a purported traffic violation, and the HPD's use of unreasonable and excessive force against each of the PLAINTIFFS.

44.    PLAINTIFFS were harmed by DEFENDANTS' conduct, and DEFENDANTS' conduct was a substantial factor in causing PLAINTIFFS' harm.

45.    As a direct and proximate result of the unlawful conduct of DEFENDANTS, PLAINTIFFS have and will continue to suffer economic, physical, and emotional injuries. PLAINTIFFS are thus entitled to general and compensatory damages according to proof at the time of trial.

46.    PLAINTIFFS are informed and believe and based thereon allege that the CITY and DOES 1 through 25, inclusive, and each of them by engaging in the aforementioned acts and/or in authorizing and/or ratifying such acts, engaged in willful, malicious, intentional, oppressive and despicable conduct, and acted with a conscious disregard for the rights of PLAINTIFFS, entitling PLAINTIFFS to an award of exemplary and punitive damages against all non-government entity defendants, including Defendants DOES 1 through 25, inclusive, in an amount to be determined at the time of trial.

47.    DEFENDANTS, and each of them, are liable to PLAINTIFFS for reasonable attorneys' fees and costs of suit pursuant to California Civil Code section 52.1(i) and California Code of Civil section 1021.5.

//

//

//

# **THIRD CAUSE OF ACTION**

Assault and Battery

(Cal. Govt. Code §§ 815.2(a), 820(a))

(PLAINTIFFS Against the CITY and DOES 1 through 25, inclusive)

48.     PLAINTIFFS re-allege and incorporate by reference the allegations contained in all previous paragraphs, as though fully set forth at length herein.

49.     Defendants DOES 1 through 25, inclusive, while working as police officers for the CITY and acting within the course and scope of their duties, not only intentionally physically attacked, detained, and arrested PLAINTIFFS, but also subjected PLAINTIFFS to unreasonable and excessive force despite PLAINTIFFS having no weapons and being of no threat to DEFENDANTS, or anyone else.

50.     As a direct and legal result of the acts and omissions of DEFENDANTS, PLAINTIFFS suffered physical pain. PLAINTIFFS have and continue to suffer from life changing mental injuries including, but not limited to, emotional and psychological distress, and future earnings and earning capacity, the exact nature and extent of which are presently unknown to PLAINTIFFS but will be proven at the time of trial.

51.     The CITY is vicariously liable for the wrongful acts of Defendants DOES 1 through 25, inclusive, under the doctrine of *respondent superior* and pursuant to California Government Code §815.2(a), which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment where the employee's act would subject him or her to liability.

52.     PLAINTIFFS are informed and believe and based thereon allege that the CITY and DOES 1 through 25, inclusive, and each of them by engaging in the aforementioned acts and/or in authorizing and/or ratifying such acts, engaged in willful, malicious, intentional, oppressive and despicable conduct, and acted with a conscious disregard for the rights of PLAINTIFFS, entitling PLAINTIFFS to an

award of exemplary and punitive damages against all non-government entity defendants, including Defendants DOES 1 through 25, inclusive, in an amount to be determined at the time of trial.

## FOURTH CAUSE OF ACTION

Intentional Infliction of Emotional Distress

(Cal. Govt. Code §§ 815.2(a), 820(a))

(PLAINTIFFS Against the CITY and DOES 1 through 25, inclusive)

53.     PLAINTIFFS re-allege and incorporate by reference the allegations contained in all previous paragraphs, as though fully set forth at length herein.

54.     The CITY is vicariously liable for the wrongful acts of Defendants DOES 1 through 25, inclusive, under the doctrine of *respondent superior* and pursuant to California Government Code §815.2(a), which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment where the employee's act would subject him or her to liability.

55.     DEFENDANTS engaged in outrageous conduct towards PLAINTIFFS so extreme that it went beyond all possible bounds of decency and that a reasonable person would regard as intolerable in a civilized community. DEFENDANTS engaged in such outrageous conduct towards PLAINTIFFS with the intention to cause,  or with reckless disregard for the probability of causing,  PLAINTIFFS to suffer severe emotional distress.

56.     DEFENDANTS' outrageous conduct towards PLAINTIFFS included, among other things:

(a) forcibly removing GADISON from his vehicle, detaining and placing him in handcuffs, and roughly pinning him against his vehicle;

(b) swatting at MONETT, striking her phone from her hand; violently throwing her up against GADISON's vehicle; placing her in severely tightened handcuffs; painfully shoving her hands unnaturally upward against

her back with the objective of causing physical pain; having male officers needlessly and forcibly grab and probe MONETT's vaginal area, rather than allowing a search to be performed by female offices; and roughly shoving MONETT into a squad car; and

(c) striking MARIAH's phone out of her hand; knocking her to the ground; roughly grabbing her hair, yanking her head back and repeatedly slamming her face against the ground while yelling "shut the fuck up!"; having an officer hook his fingers under MARIAH's jaw to yank her up from the ground, restricting her airway, causing her to choke and lose consciousness several times; then detaining and arresting MARIAH by placing her in severely tightened handcuffs, aggressively shoving her into a squad car and taking her to jail.

57.     All of this HPD conduct occurred while four young children cried and screamed in agony, helplessly watching their mother, father and grandmother beaten and treated like animals, and their dogs beaten like their parents and grandmother.  As PLAINTIFFS experienced the harm inflicted on them, they also felt helpless in protecting their children from the fear, harm and insecurity created by the spectacle of HPD officer engaging in unfettered acts of violence and excessive force.

58.     To the extent that such outrageous conduct was perpetrated by certain DEFENDANTS, the remaining DEFENDANTS adopted and ratified the conduct with a wanton and reckless disregard of the deleterious consequences to PLAINTIFFS.

59.     As a direct and proximate result of the unlawful conduct of DEFENDANTS, and each of them, PLAINTIFFS have and will continue to suffer special damages, including but not limited to, past and future loss of income, benefits, medical expenses, and other damages to be proven at the time of trial.

60.     As a direct and proximate result of the unlawful conduct of DEFENDANTS, and each of them, PLAINTIFFS have and will continue to suffer general damages including but not limited to shock, embarrassment, physical distress and injury, humiliation, emotional distress, stress and other damages to be proven at the time of trial.

61.     PLAINTIFFS are informed and believe and based thereon allege that the CITY and DOES 1 through 25, inclusive, and each of them by engaging in the aforementioned acts and/or in authorizing and/or ratifying such acts, engaged in willful, malicious, intentional, oppressive and despicable conduct, and acted with a conscious disregard for the rights of PLAINTIFFS, entitling PLAINTIFFS to an award of exemplary and punitive damages against all non-government entity defendants, including Defendants DOES 1 through 25, inclusive, in an amount to be determined at the time of trial.

### FIFTH CAUSE OF ACTION

False Arrest and Imprisonment

(Cal. Govt. Code §§ 815.2(a), 820(a))

(PLAINTIFFS Against the CITY and DOES 1 through 25, inclusive)

62.     PLAINTIFFS re-allege and incorporate by reference the allegations contained in all previous paragraphs, as though fully set forth at length herein.

63.     The CITY is vicariously liable for the wrongful acts of Defendants DOES 1 through 25, inclusive, under the doctrine of *respondent superior* and pursuant to California Government Code §815.2(a), which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment where the employee's act would subject him or her to liability.

64.     The CITY, through the conduct of its employees and agents, including the HPD and DOES 1 through 25, inclusive, intentionally deprived PLAINTIFFS' freedom of movement by use of physical force, threats of force, and violence.

- 19 -

65.    The restraint, confinement, and detention of PLAINTIFFS by DEFENDANTS, and each of them, was performed without reasonable suspicion or probable cause and for an unreasonable length of time. During the unreasonable detention of PLAINTIFFS, they were prevented from leaving the location of the incident, the HPD squad vehicles, or the jail.

66.    PLAINTIFFS were harmed by DEFENDANTS' conduct, and DEFENDANTS' conduct was a substantial factor in causing PLAINTIFFS' harm.

67.    As a direct and proximate result of the unlawful conduct of DEFENDANTS, PLAINTIFFS have and will continue to suffer economic, physical, and emotional injuries. PLAINTIFFS are thus entitled to general and compensatory damages according to proof at the time of trial.

68.    PLAINTIFFS are informed and believe and based thereon allege that the CITY and DOES 1 through 25, inclusive, and each of them by engaging in the aforementioned acts and/or in authorizing and/or ratifying such acts, engaged in willful, malicious, intentional, oppressive and despicable conduct, and acted with a conscious disregard for the rights of PLAINTIFFS, entitling PLAINTIFFS to an award of exemplary and punitive damages against all non-government entity defendants, including Defendants DOES 1 through 25, inclusive, in an amount to be determined at the time of trial.

## SIXTH CAUSE OF ACTION

Trespass to Chattels

(MARIAH and MONETT Against the

CITY and DOES 1 through 25, inclusive)

69.    MARIAH and MONETT re-allege and incorporate by reference the allegations contained in all previous paragraphs, as though fully set forth at length herein.

70.    The CITY is vicariously liable for the wrongful acts of Defendants

DOES 1 through 25, inclusive, under the doctrine of *respondent superior* and pursuant to California Government Code §815.2(a), which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment where the employee's act would subject him or her to liability.

71.     All of the CITY's police officers, including DOES 1 through 25, inclusive, have a duty to use reasonable care to prevent harm or injury to others and to their property. This duty includes using appropriate tactics, giving appropriate commands, giving warnings, and generally avoiding use of any force unless necessary and appropriate to the circumstances, and providing timely and reasonable medical care.

72.     The CITY has a duty to enforce adequate training, procedure, policy, and/or discipline in regard to approaching, detaining, and interacting with suspects, civilians, and other lay persons without exercising unreasonable and excessive use of force.

73.     MARIAH and MONETT were the lawful owners and/or guardians of two dogs named "Blue" and "Rocky."

74.     DEFENDANTS intentionally and recklessly interfered with MARIAH and MONETT's use and possession of Blue and Rocky by lifting Blue up by the collar and violently throwing him to the ground and using a baton to brutally beat Rocky, to the point of requiring veterinary treatment.

75.     MARIAH and MONETT kept and maintained their dogs physical restrained on PLAINTIFFS' private property and at no time consented to DEFENDANTS' interference with PLAINTIFFS' use and possession of their dogs in the hateful acts of aggression committed by DEFENDANTS.

76.     MARIAH and MONETT were harmed, and DEFENDANTS' conduct was a substantial factor in causing their harm.

77.     As a direct and proximate result of the unlawful conduct of

DEFENDANTS, PLAINTIFFS have and will continue to suffer economic and emotional injuries. PLAINTIFFS are thus entitled to general and compensatory damages according to proof at the time of trial. "[W]e uphold both the economic and emotional distress damages plaintiffs recovered for trespass to personal property arising from [defendant]'s act of intentionally striking [plaintiff's dog] with a bat." *Plotnik v. Meihaus*, 208 Cal. App. 4th 1590, 1608 (2012).

## SEVENTH CAUSE OF ACTION

Negligence

(Cal. Govt. Code §§ 815.2(a), 820(a) and California Common Law)

(PLAINTIFFS Against the CITY and DOES 1 through 25, inclusive)

78.     PLAINTIFFS re-allege and incorporate by reference the allegations contained in all previous paragraphs, as though fully set forth at length herein.

79.     The CITY is vicariously liable for the wrongful acts of Defendants DOES 1 through 25, inclusive, under the doctrine of *respondent superior* and pursuant to California Government Code §815.2(a), which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment where the employee's act would subject him or her to liability.

80.     All of the CITY's police officers, including DOES 1 through 25, inclusive, have a duty to use reasonable care to prevent harm or injury to others. This duty includes using appropriate tactics, giving appropriate commands, giving warnings, avoiding use of any force unless necessary, and providing timely and reasonable medical care.

81.     The CITY has a duty to enforce adequate training, procedure, policy, and/or discipline in regard to approaching, detaining, and interacting with suspects, civilians, and other lay persons without exercising unreasonable and excessive use of force.

82.     DEFENDANTS breached this duty of care and their actions and

inactions were negligent and reckless, as evidenced, in part, by their:

    a.    Failure to properly and adequately assess the need to use excessive force against PLAINTIFFS;

    b.    failure to monitor and record any use of force by Defendants DOES 1 through 25, inclusive;

    c.    failure to monitor and record any injuries specifically caused by the use of excessive force by Defendants DOES 1 through 25, inclusive;

    d.    negligent use of unreasonable and excessive force against PLAINTIFFS;

    e.    failure to provide prompt, timely, and reasonable medical care to PLAINTIFFS;

    f.    failure to properly train and supervise employees, both professional and non-professional, including Defendants DOES 1 through 25, inclusive; and

    g.    negligent handling of evidence and witnesses.

83.    DEFENDANTS engaged in negligent and reckless conduct, as described in detail above.

84.    PLAINTIFFS were harmed by DEFENDANTS' conduct, and DEFENDANTS' conduct was a substantial factor in causing PLAINTIFFS' harm.

85.    As a direct and proximate result of the unlawful conduct of DEFENDANTS, PLAINTIFFS have and will continue to suffer economic, physical, and emotional injuries. PLAINTIFFS are thus entitled to general and compensatory damages according to proof at the time of trial.

86.    PLAINTIFFS are informed and believe and based thereon allege that the CITY and DOES 1 through 25, inclusive, and each of them by engaging in the aforementioned acts and/or in authorizing and/or ratifying such acts, engaged in willful, malicious, intentional, oppressive and despicable conduct, and acted with a

conscious disregard for the rights of PLAINTIFFS, entitling PLAINTIFFS to an award of exemplary and punitive damages against all non-government entity defendants, including Defendants DOES 1 through 25, inclusive, in an amount to be determined at the time of trial.

## EIGHTH CAUSE OF ACTION

Deprivation of Civil Rights Based on

Excessive and Unreasonable Use of Force

(42 U.S.C. § 1983)

(PLAINTIFFS Against the CITY and DOES 1 through 25, inclusive)

87.    PLAINTIFFS re-allege and incorporate by reference the allegations contained in all previous paragraphs, as though fully set forth at length herein.

88.    PLAINTIFFS bring this claim under 42 U.S.C. § 1983 for violation of the Fourth Amendment of the U.S. Constitution, which precludes Defendants the CITY and DOES 1 through 25, inclusive, from using unreasonable and excessive force.

89.    "The right to be free from excessive force in the context of an arrest is clearly established under the Fourth Amendment." *Small v. McCrystal*, 708 F.3d 997, 1005 (8th. Cir. 2013) (citation omitted). "We analyze the excessive force claims of pretrial detainees under an objective reasonableness standard." *Ryan v. Armstrong*, 850 F.3d 419, 427 (8th Cir. 2017). "Circumstances relevant to the reasonableness of the officer's conduct include 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009) (citation omitted).

90.    The use of force against PLAINTIFFS by DEFENDANTS was unreasonable in light of the totality of the circumstances, including but not limited

to:

    a.     PLAINTIFFS were targeted, physically restrained, detained, and subjected to physical violence solely because of their race;

    b.     PLAINTIFFS were engaging in lawful conduct at all times relevant and were not armed with any kind of weapon, and posed no reasonable or credible threat of violence or injury to any HPD officer, nor to any other individual;

    c.     PLAINTIFFS were assaulted and battered by DEFENDANTS on private property;

    d.     DEFENDANTS forcibly removed GADISON from his vehicle, placed him in severely tightened handcuffs, and roughly pinned the front of his body against his vehicle without reasonable suspicion and/or probable cause;

    e.     The length of time of the physical restraint, detention, and handcuffing.

91.    Both prior to and during PLAINTIFFS being subjected to assault and battery by DEFENDANTS, PLAINTIFFS made no aggressive movements, furtive gestures, or physical movements which would suggest to a reasonable peace officer that any of the PLAINTIFFS were armed with any kind of weapon or had the will or the ability to inflict bodily harm against any individual.

92.    Both prior to and during PLAINTIFFS being subjected to assault and battery by DEFENDANTS, PLAINTIFFS were not actively resisting or obstructing any of the HPD officers in the performance of their duties, were not fleeing or attempting to flee from the involved HPD officers and were not undertaking any actions which would have led a reasonable peace officer to believe that PLAINTIFFS posed a risk of violence or injury to any person.

93.    As a direct and legal result of the acts and omissions of DEFENDANTS, PLAINTIFFS have and will continue to suffer from pain and

physical injury and life changing mental injuries including, but not limited to, emotional and psychological distress, and future earnings and earning capacity, the exact nature and extent of which are presently unknown to the PLAINTIFFS but will be proven at the time of trial.

94.     PLAINTIFFS are informed and believe and based thereon allege that the CITY and DOES 1 through 25, inclusive, and each of them by engaging in the aforementioned acts and/or in authorizing and/or ratifying such acts, engaged in willful, malicious, intentional, oppressive and despicable conduct, and acted with a conscious disregard for the rights of PLAINTIFFS, entitling PLAINTIFFS to an award of exemplary and punitive damages against all non-government entity defendants, including Defendants DOES 1 through 25, inclusive, in an amount to be determined at the time of trial.

95.     PLAINTIFFS are entitled to and will seek reasonable attorneys' fees and costs of suit, pursuant to 42 U.S.C. § 1988.

## NINTH CAUSE OF ACTION

Deprivation of Civil Rights Based on

*Monell* Claim for Municipal Liability

(42 U.S.C. § 1983)

(PLAINTIFFS Against the CITY)

96.     PLAINTIFFS re-allege and incorporate by reference the allegations contained in all previous paragraphs, as though fully set forth at length herein.

97.     Municipal bodies are liable for constitutional violations under 42 U.S.C. § 1983 when execution of its official policy or custom deprives an individual of its rights protected under the Constitution. *See Monell v. Department of Social Services*, 436 U.S. 658, 694-95 (1978). Such municipal liability exists where a city fails to properly train, supervise, and discipline its employees amounting in a deliberate indifference to one's constitutional rights. *See City of*

*Canton, Ohio v. Harris*, 489 U.S. 378 (1989); *Patzner v. Burkett*, 779 F.2d 1363, 1367 (8th Cir. 1985); *Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983).

98.     At all times relevant, Defendant the CITY had a duty to properly train, supervise, and discipline its HPD officers, including DOES 1 through 25, inclusive. The CITY failed to adequately and properly train its law enforcement officers to handle the usual and recuring situations with which they must deal, or how, when and under what circumstances lethal and nonlethal use of force is warranted, or the threat of such lethal force, and not to use excessive force. The CITY was deliberately indifferent to the obvious consequences of its failure to adequately train HPD officers.

99.     Failure of the CITY to provide adequate training, including with regard to use of force, and threats of use of force, caused the deprivation of PLAINTIFFS' rights by the CITY. The CITY's failure to train is so closely related to the unconstitutional use of excessive force and unlawful seizure, detention, and arrest against PLAINTIFFS as to be the moving force underlying same against PLAINTIFFS.

100.   With respect to Defendants DOES 1 through 25, inclusive, the CITY failed to properly and adequately discipline, reprimand, retrain, suspend, or otherwise penalize conduct and actions in connection with the unprovoked used of excessive force and unlawful seizure, detention, and arrest of PLAINTIFFS.

101.   The CITY, together with policy makers and supervisors, maintained and engaged in the following unconstitutional customs, practices, and policies:

a.     Use and threats of use of excessive force;

b.     Providing inadequate training regarding the use of excessive force;

c.     Employing and retaining peace officer individuals, such as Defendants DOES 1 through 25, inclusive, who the CITY, including the HPD, at all times material herein knew or reasonably should have known had

dangerous propensities for abusing their authority and for using excessive force;

d. Inadequately supervising, training, controlling, assigning, and disciplining HPD officers, and other personnel, including Defendants DOES 1 through 25, inclusive, who the CITY, including the HPD, knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits;

e. Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining, and controlling misconduct by HPD officer, namely Defendants DOES 1 through 25, inclusive;

f. Failure to adequately discipline Defendants DOES 1 through 25, inclusive, regarding the magnitude of the misconduct, and other inadequate discipline that is tantamount to encouraging misconduct; and

g. Failure to professionally train peace officers on the proper use of nonlethal force.

102. By reason of the aforementioned acts and omissions, PLAINTIFFS have and will continue to suffer from pain, physical and life changing mental injuries including, but not limited to, emotional and psychological distress, and loss of future earnings and earning capacity, the exact nature and extent of which are presently unknown to the PLAINTIFFS but will be proven at the time of trial.

103. The CITY, together with various officials whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above. By perpetrating, sanctioning, tolerating, and ratifying the outrageous conduct and other wrongful acts, Defendants the CITY acted with intentional, reckless, and callous disregard for the PLAINTIFFS' constitutional rights. Furthermore, the policies, practices, and customs

implemented, maintained, and still tolerated by the CITY were affirmatively linked to and were a significantly influential force behind the deprivation of PLAINTIFFS' civil rights, including the right to be free from excessive force and unlawful seizure, detention, and arrest.

104.   PLAINTIFFS are entitled to and will seek reasonable attorneys' fees and costs of suit, pursuant to 42 U.S.C. § 1988.

## TENTH CAUSE OF ACTION

Deprivation of Civil Rights and Equal Protection –

Unlawful Detention, Seizure, and Arrest

(42 U.S.C. § 1983)

(PLAINTIFFS Against the CITY and DOES 1 through 25, inclusive)

105.   PLAINTIFFS re-allege and incorporate by reference the allegations contained in all previous paragraphs, as though fully set forth at length herein.

106.   At all times relevant to the acts and omissions herein alleged, Defendants DOES 1 through 25, inclusive, were employed by the CITY as law enforcement officers and were acting under color of law and in the course and scope of their employment.

107.   At all times relevant herein, PLAINTIFFS had a constitutionally afforded right to equal protection under the law as afforded by the Fourteenth Amendment and protected by the same and 42 U.S.C. §1983. PLAINTIFFS allege that the substantial and motivating reason for the use of excessive force and their unlawful seizure, detention, and arrest, by the CITY and DOES 1 through 25, inclusive, was because of PLAINTIFFS' race and was without any reasonable suspicion and/or probable cause that PLAINTIFFS engaged in unlawful conduct.

108.   At all times relevant herein, PLAINTIFFS had a constitutionally afforded right against unlawful arrests not based on any reasonable suspicion and/or objective probable cause that PLAINTIFFS had committed any crime.

PLAINTIFFS allege that Defendants the CITY and DOES 1 through 25, inclusive, had no information that PLAINTIFFS had threatened or were a threat to anyone or had committed any crime. Further, DEFENDANTS had no information sufficient to establish reasonable suspicion to seize/detain PLAINTIFFS and/or probable cause to suspect that PLAINTIFFS had engaged, were engaging, or were about to engage in any crime.

109.   PLAINTIFFS' detention, seizure, and arrest was unlawful because it was unreasonable in time and/or manner unnecessarily painful, degrading, harmful, intrusive, humiliating, prolonged, and not justified under the circumstances. DEFENDANTS unreasonably seized, detained, and arrested PLAINTIFFS in a fearsome, degrading, prolonged, intimidating, intrusive, and embarrassing manner despite no reasonable belief that PLAINTIFFS were armed, or verbally or physically resisting them, or attempting to flee or a threat of death or serious bodily harm to anyone, including Defendants DOES 1 through 25, inclusive.

110.   As a direct and legal result of the acts and omissions of DEFENDANTS, PLAINTIFFS have and will continue to suffer from pain, physical and life changing mental injuries including, but not limited to, emotional and psychological distress, and loss of future earnings and earning capacity, the exact nature and extent of which are presently unknown to the PLAINTIFFS but will be proven at the time of trial.

111.   PLAINTIFFS are informed and believe and based thereon allege that the CITY and DOES 1 through 25, inclusive, and each of them by engaging in the aforementioned acts and/or in authorizing and/or ratifying such acts, engaged in willful, malicious, intentional, oppressive and despicable conduct, and acted with a conscious disregard for the rights of PLAINTIFFS, entitling PLAINTIFFS to an award of exemplary and punitive damages against all non-government entity defendants, including Defendants DOES 1 through 25, inclusive, in an amount to be

- 30 -

determined at the time of trial.

112.   PLAINTIFFS are entitled to and will seek reasonable attorneys' fees and costs of suit, pursuant to 42 U.S.C. § 1988.

**ELEVENTH CAUSE OF ACTION**

Deprivation of Civil Rights Based on Violation

of the First Amendment (Freedom of Speech)

(42 U.S.C. § 1983)

(MARIAH and MONETT Against the CITY

and DOES 1 through 25, inclusive)

113.   MARIAH and MONETT re-allege and incorporate by reference the allegations contained in all previous paragraphs, as though fully set forth at length herein.

114.   At all times relevant to the acts and omissions herein alleged, Defendants DOES 1 through 25, inclusive, were employed by the CITY as law enforcement officers and were acting under color of law and in the course and scope of their employment.

115.   At all times relevant herein, MARIAH and MONETT held and engaged in constitutionally protected freedom of speech by  (a) filming the conduct of HPD officers while on PLAINTIFFS' private property, and (b) voicing verbal objections of excessive force and officer misconduct by HPD officers. Recording governmental officers engaged in public duties is a form of speech through which private individuals may gather and disseminate information of public concern, including the conduct of law enforcement officers. *See*, *e.g.*, *Glik v. Cunniffe*, 655 F. 3d 78, 82 (1st Cir. 2011) ("[b]asic First Amendment principles" and federal case law "unambiguously" establish that private individuals possess "a constitutionally protected right to videotape police carrying out their duties."); *Smith v. Cumming*, 212 F. 3d. 1332, 1333 (11th Cir. 2000) (recognizing the "First Amendment right . . .

COMPLAINT AND DEMAND FOR JURY TRIAL

to photograph or videotape police conduct."); *Fordyce v. City of Seattle*, 55 F. 3d 436, 439 (9th Cir. 1995) (recognizing the "First Amendment right to film matters of public interest.")  The right to "[g]ather[] information about government officials in a form that can be readily disseminated to others serves as a cardinal First Amendment interest in protecting and promoting 'the free discussion of governmental affairs.'" *Glik*, 655 F. 3d at 82 (citing *Mills v. Alabama*, 384 U.S. 214, 218 (1966)).

116.   The application of this right to the conduct of law enforcement officers is critically important because officers are "granted substantial discretion that may be used to deprive individuals of their liberties." *Id*.; *Gentile v. State Bar of Nev*., 501 U.S. 1030, 1035-36 (1991) ("Public awareness and criticism have even greater importance where, as here, they concern allegations of police corruption."). The "extensive public scrutiny and criticism" of police and other criminal justice system officials serves to "guard[] against the miscarriage of justice," *Nebraska Press Association v. Stuart*, 427 U.S. 539, 560 (1976) (citing *Sheppard v. Maxwell*, 384 U.S. 333, 350 (1966)), a harm that undermines public confidence in the administration of government. When police departments take affirmative steps to protect individuals' First Amendment rights, departments "not only aid[] in the uncovering of abuses . . . but also may have a salutary effect on the functioning of government more generally." *Glik*, 655 F.3d at 82-83. Courts have also extended First Amendment protection to recordings taken on private property, including an individual filming police activity from his or her home or other private property where an individual has a right to be present. *See Jean v. Massachusetts State Police*, 492 F. 3d 24 (1st Cir. 2007) (activist's posting of a video of "a warrantless and potentially unlawful search of a private residence" on her website was entitled to First Amendment protection); *Pomykacz v. Borough of West Wildwood,* 438 F. Supp. 2d 504, 513 (D. N.J. 2006) (individual was engaging in political activism

protected by the First Amendment when she photographed police officer while officer was in police headquarters and in municipal building); *Robinson v. Fetterman*, 378 F. Supp. 2d 534, 541 (E.D. Pa. 2005) (individual who videotaped state troopers from private property with the owner's permission was engaged in constitutionally protected speech). An individual's conduct does not constitute interference if he or she expresses criticism of the police, or police activity being observed. *See City of Houston, Tex. v. Hill*, 482 U.S. 451, 461 (1987) ("[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers."); *Norwell v. City of Cincinnati, Ohio*, 414 U.S. 14, 16 (1973) ("Surely, one is not to be punished for non-provocatively voicing his objection to what he obviously felt was a highly questionable detention by a police officer.") Even foul expressions of disapproval towards police officers are protected under the First Amendment. *See, e.g., Duran v. City of Douglas, Arizona*, 904 F. 2d 1372, 1377-78 (9th Cir. 1990) (individual who was "making obscene gestures" and "yell[ed] profanities" at an officer engaged in conduct that "fell squarely within the protective umbrella of the First Amendment and any action to punish or deter such speech—such as stopping or hassling the speaker—is categorically prohibited by the Constitution.").

117. In response to MARIAH and MONETT engaging in protected First Amendment conduct, HPD officers brutally attacked PLAINTIFFS by:

(a)     swatting at MONETT, striking her phone from her hand; violently throwing her up against GADISON's vehicle; placing her in severely tightened handcuffs; painfully shoving her hands unnaturally upward against her back with the objective of causing physical pain; having male officers needlessly and forcibly grab and probe MONETT's vaginal area, rather than allowing a search to be performed by female offices; and roughly shoving MONETT into a squad car; and

(b)    striking MARIAH's phone out of her hand; knocking her to the ground; roughly grabbing her hair, yanking her head back and repeatedly slamming her face against the ground while yelling "shut the fuck up!"; having an officer hook his fingers under MARIAH's jaw to yank her up from the ground, restricting her airway, causing her to choke and lose consciousness several times; then detaining and arresting MARIAH by placing her in severely tightened handcuffs, aggressively shoving her into a squad car and taking her to jail.

118.    DEFENDANTS engaged in the aforementioned conduct with the intent to deprive MARIAH and MONETT from exercising their First Amendment rights. As a direct and legal result of the acts and omissions of DEFENDANTS, PLAINTIFFS have and will continue to suffer from pain, physical and life changing mental injuries including, but not limited to, emotional and psychological distress, and loss of future earnings and earning capacity, the exact nature and extent of which are presently unknown to the PLAINTIFFS but will be proven at the time of trial.

119.    PLAINTIFFS are informed and believe and based thereon allege that the CITY and DOES 1 through 25, inclusive, and each of them by engaging in the aforementioned acts and/or in authorizing and/or ratifying such acts, engaged in willful, malicious, intentional, oppressive and despicable conduct, and acted with a conscious disregard for the rights of PLAINTIFFS, entitling PLAINTIFFS to an award of exemplary and punitive damages against all non-government entity defendants, including Defendants DOES 1 through 25, inclusive, in an amount to be determined at the time of trial.

120.    PLAINTIFFS are entitled to and will seek reasonable attorneys' fees and costs of suit, pursuant to 42 U.S.C. § 1988.

//

1

## **PRAYER FOR RELIEF**

2   **WHEREFORE**, PLAINTIFFS request entry of judgement in their favor and

3   against Defendants the CITY and DOES 1 through 25, inclusive, as follows:

4      1.      For general and special damages according to proof;

5      2.      For pre-judgment and post-judgment interest;

6      3.      For punitive damages against DOES 1 through 25, inclusive;

7      4.      For attorneys' fees and costs as allowed by law;

8      5.      For civil penalties as allowed by law;

9      6.      For such other relief as the Court may deem just and proper.

10

11   DATED: March 3, 2022        Respectfully Submitted,

12

13                                  TONI J. JARAMILLA, A Professional Law Corp.

14                                  ALEXANDER MORRISON + FEHR LLP

15

16                             By: _/s/ *Toni J. Jaramilla*_____

17                                  Toni J. Jaramilla
                                    J. Bernard Alexander, III

18                                  John L. Schwab
                                    Attorneys for PLAINTIFFS

19

20

21

22

23

24

25

26

27

28

- 35 -

1

## **DEMAND FOR JURY TRIAL**

2        PLAINTIFFS hereby request trial by jury on all claims and issues that are so

3   triable.

4   DATED: March 3, 2022       Respectfully Submitted,

5

6                              TONI J. JARAMILLA, A Professional Law Corp.

7                              ALEXANDER MORRISON + FEHR LLP

8

9                         By: _/s/ Toni J. Jaramilla_____

10                             Toni J. Jaramilla
                               J. Bernard Alexander, III
11                             John L. Schwab
                               Attorneys for PLAINTIFFS
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT AND DEMAND FOR JURY TRIAL