UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **5:22-cv-00394-JWH-SHK** | Date: | September 14, 2023 |
|---|---|---|---|

| Title: | ***Mariah Hereford, et al. v. City of Hemet, et al.*** |
|---|---|

Present: The Honorable  Shashi H. Kewalramani, United States Magistrate Judge

| D. Castellanos | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings (IN CHAMBERS):   ORDER GRANTING PLAINTIFFS' MOTION TO COMPEL FURTHER RESPONSE TO REQUEST FOR PRODUCTION NO. 38 [ECF No. 47]**

On February 23, 2023, Plaintiffs Mariah Hereford, Monett Hereford, and Ryan Gadison (collectively, "Plaintiffs") filed a Notice of Motion and Motion to Compel Further Response to Request for Production [("RFP")] No. 38 ("Motion to Compel" or "MTC").  Electronic Case Filing Number ("ECF No.") 47, MTC.  On February 28, 2023, Defendants City of Hemet and Officer P. Sobaszek (collectively, "City Defendants") filed a Brief Pursuant to Court's Order re Continued Informal Discovery Dispute ("Opposition" or "Opp'n"), opposing the Motion to Compel.  ECF No. 48, Opp'n.  And on March 1, 2023, Plaintiffs filed a Reply in Support of the Motion to Compel ("Reply").  ECF No. 49, Reply.  On March 21, 2023, Plaintiffs filed their Second Amended Complaint ("SAC"), ECF No. 55, and Defendants State of California and California Highway Patrol Officer Michael Bell (collectively, "State Defendants") filed a motion to dismiss the claims against the State Defendants, ECF No. 57.  It does not appear that City Defendants have filed a response to the SAC.

After reviewing the parties' arguments, for the reasons set forth in this Order, the Court **GRANTS** Plaintiffs' Motion to Compel.

# I.    BACKGROUND

## A.    Procedural History

On March 3, 2022, Plaintiffs filed a complaint ("Complaint").  ECF No. 1, Complaint. On April 19, 2022, Defendant City of Hemet filed an Answer to the Complaint ("Answer"). ECF No. 12, Answer.

On June 10, 2022, the parties filed a Joint Rule 26(f) Report.  ECF No. 16.  On June 21, 2022, the parties filed a Joint Stipulation for Protective Order, ECF No. 17, and the Court entered a Stipulated Protective Order re Confidential Documents ("Protective Order") the same day, ECF No. 18, Protective Order.  On June 27, 2022, the Court entered a Civil Trial Scheduling Order ("Scheduling Order").  ECF No. 20.  The same day, the Court entered an Order referring the parties to private mediation, with an Alternative Dispute Resolution ("ADR") proceeding to be completed by May 12, 2023.  ECF No. 21.

On October 17, 2022, the parties filed a Joint Stipulation for Leave to File a First Amended Complaint, which the Court granted on October 29, 2022.  ECF Nos. 22-23.  Thus, on November 1, 2022, Plaintiffs filed the First Amended Complaint ("FAC").  ECF No. 24. Defendants filed an Answer to the FAC ("Answer to FAC") on November 15, 2022.  ECF No. 28.

On January 31, 2023, pursuant to the parties' request, an informal dispute conference was held before this Magistrate Judge.  ECF Nos. 35, 39.  On February 7, 2023, the Court held another continued informal discovery dispute conference, during which the Court set a briefing schedule regarding the parties' dispute over RFP No. 38.  See ECF No. 41.  On February 17, 2023, the parties entered a Joint Stipulation to Continue Trial and Pre-Trial Deadlines, ECF No. 42, which the Court granted on February 21, 2023 ("Amended Scheduling Order"), moving, inter alia, the discovery cut-off to December 15, 2023 and the dispositive motion hearing cut-off to March 1, 2024, ECF No. 45, Amended Scheduling Order at 2.

On February 23, 2023, Plaintiffs filed the instant Motion to Compel ("MTC").  ECF No. 47.  On February 28, 2023, Defendants filed the Opposition to the Motion to Compel, ECF No. 48, Opp'n, and on March 1, 2023, Plaintiffs filed the Reply, ECF No. 49, Reply.  On March 17, 2023, the parties entered a Joint Stipulation for Leave [for Plaintiffs] to file a Second Amended Complaint, which the Court granted on March 21, 2023.  ECF Nos. 53-54.  Thus, Plaintiffs filed the Second Amended Complaint ("SAC") on March 21, 2023.  ECF No. 55.  It does not appear the City Defendants have answered or otherwise responded to the SAC.

## B.    The Disputed Discovery

At issue is Plaintiffs' RFP No. 38, which seeks: "All DOCUMENTS and investigations reflecting allegations, lawsuits, and complaints for the use of excessive force against DEFENDANT [expressly defined as the City of Hemet] and/or the HPD from January 2012 to the present."  See ECF No. 47, MTC at 2.

Defendants initially objected to RFP No. 38 with an "executive privilege declaration" and later served the following supplemental response and objections:

OBJECTION: Responding Party incorporates by reference here each of the objections stated in the General Objections section, supra.

RELEVANCE: As phrased, this request potentially calls for the production of documents or information that are not relevant to any party's claim or defense and are not proportional to the needs of this case, per Federal Rules of Civil Procedure 26.

VAGUE, AMBIGUOUS, and COMPOUND: This request is also vague, ambiguous, compound and unduly burdensome as phrased, and is therefore not likely to lead to admissible evidence.

LAW ENFORCEMENT PRIVILEGES: As phrased, this request potentially calls for the production of documents or information that are privileged from disclosure under the federal law enforcement investigative privilege, the federal executive deliberative process and official information privileges, the federal and California constitutional right to privacy . . ., and/or—in light of its broad phrasing so as to potentially include Defendants' attorneys—potentially including the attorney client privilege (including but not limited to its investigative aspect) and/or the attorney work product protection.

ATTORNEY-CLIENT PRIVILEGE / WORK PRODUCT PRIVILEGE: As phrased, this request potentially calls for the production of documents or information that includes attorney-client privilege information (including but not limited to its investigative aspect) and/or the attorney work product protection.

Notwithstanding and without waiving the foregoing objections, and to the extent the Responding Party understands the request, Responding Party responds as follows: Defendants are willing to produce documents responsive to this request wherein there has been substantiated finding of an officers' excessive use of force, dishonesty, and/or racially discriminatory conduct for the time period of approximately five (5) years prior to the date of this Incident, if any such documents exist. With these parameters set forth: after a thorough, careful, and diligent search, Responding Party was unable to locate records responsive to this request . . . .

See ECF No 48, Opp'n at 2-3.

---

### C.     The Parties' Arguments

#### 1.   Plaintiffs' Motion to Compel

In the Motion to Compel, Plaintiffs make the following arguments as to why the Court should compel Defendants to provide an amended supplemental response to RFP No. 38.

##### a.   Background

As an initial matter, Plaintiffs note that they have already agreed to narrow RFP No. 38, to remove documents related to the "mistreatment of civilians." ECF No. 47, MTC at 2. Defendant City of Hemet, however, refuses to produce the materials sought by RFP No. 38 and instead "unilaterally limited its response to <u>substantiated</u> records pertaining to <u>only the incident-involved officers</u> for the last <u>five years</u>." <u>Id.</u> (emphases in original).

In their statement of facts, Plaintiffs assert that they filed this case against the City of Hemet and individual police officers pursuant to 42 U.S.C. § 1983 ("§ 1983") alleging civil rights violations, including intentional infliction of emotional distress, excessive force, First Amendment violations, and <u>Monell</u> claims, following a violent incident during which members of Hemet's "Gang Task Force" arrested Mr. Gadison without probable cause, assaulted Monett Hereford in retaliation for Monett filming the arrest, "grabbed [Mariah Hereford] by her hair and slammed her face against the ground multiple times," and threw Plaintiffs' dog to the ground and beat them with a baton. <u>Id.</u> at 2-3. Following meet-and-confer efforts and two informal discovery conferences, the last remaining discovery issue is Defendant City of Hemet's response to RFP No. 38. <u>Id.</u> at 3.

##### b.   Argument

First, Plaintiffs argue that RFP No. 38 seeks documents relevant to their excessive force claims against Defendants. Under Federal Rule of Civil Procedure ("Rule") 26(b)(1), a party, upon request, must produce any non-privileged materials that are "relevant to any party's claim or defense and proportional to the needs of the case." <u>Id.</u> Here, materials related to allegations, complaints, and lawsuits against the Defendant City and its police department are essential to the excessive force action because Plaintiffs seek to impose liability on a local government under § 1983 and, thus, must prove that "action pursuant to official municipal policy," including "constitutional deprivations visited pursuant to governmental 'custom'" caused their injury. <u>Id.</u> (quoting <u>Monell v. Department of Soc. Servs.</u>, 436 U.S. 658, 690-91 (1978)). Therefore, relevant discovery must include evidence of the municipality's "'deliberate indifference' to the rights of its inhabitants." <u>Id.</u> at 4 (quoting <u>City of Canton v. Harris</u>, 489 U.S. 378, 389 (1989)).

Plaintiffs argue that complaints regarding the Hemet Police Department's use of excessive force may evidence that Hemet police officers so often violate citizens' constitutional rights that the need for more or different training was plainly obvious, making city policymakers "deliberately indifferent" to this need and showing that Hemet has a "policy of inaction." <u>Id.</u> (citing <u>Connick v. Thompson</u>, 563 U.S. 51, 61 (2011)). Thus, the information sought by RFP No. 38 is relevant to Plaintiffs' allegations because if "Hemet officers regularly engage in

excessive force, about which the City and police department had notice through complaints, which officials failed to correct, it might reflect a systemic issue evidencing a 'policy of inaction.'" Id.  Plaintiffs state that a "pervasive atmosphere of exerting excessive force perhaps explains why these officers were empowered to engage in similar conduct here" and were not reprimanded.  Id.

Second, Plaintiffs argue the documents sought are not subject to law enforcement, attorney-client, or work product privileges.  Defendants' initial and supplemental responses to Plaintiffs' RFPs "copy and paste a slew of California evidentiary and privacy interests, which federal courts have uniformly rejected as inapplicable in §1983 actions." Id. (citing, inter alia, Miller v. Pancucci, 141 F.R.D. 292, 295 (C.D. Cal. 1992)).  Further, Defendants failed to file "an affidavit from a responsible official . . . to identify any interests that required the documents to be withheld," and still indicate they are unsure whether documents responsive to RFP No. 38 exist, meaning Defendants cannot have complied with applicable procedural requirements.  Id. (citing Kelly v. City of San Jose, 114 F.R.D. 653, 669-670 (N.D. Cal. 1987)).  Indeed, Defendants have only offered unsupported, boilerplate objections and have "failed to delineate any interests that might be implicated in disclosure" were they to respond to RFP No. 38.  Id. at 5.

Plaintiffs argue that "[w]eighing the benefits of disclosure against the disadvantages," the Court must consider: (1) the interests of law enforcement; (2) the privacy interests of police officers and citizens who give information to authorities; (3) the interests of civil rights plaintiffs; (4) the policies that underlie national civil rights law; and (5) the needs of judicial process.  Id. (citing Kelly, 114 F.R.D. at 660).  The balancing approach in civil rights cases is "'moderately pre-weighted in favor of disclosure.'"  Id. (quoting Kelly, 114 F.R.D. at 661).

Here, Plaintiffs have already "agreed that identifying information of non-incident-involved officers, public employees, and citizen complainants or witnesses could be redacted to protect privacy rights."  Id.  Further, courts "have routinely ordered the production of personnel files of third parties in . . . police brutality cases," California public policy strongly favors disclosure of police records in such cases, Defendant City of Hemet's history of receiving excessive force complaints is a crucial element of Plaintiffs' case, and such information is not available from other sources.  Id. (citations omitted).  Thus, Plaintiffs request "that [City] Defendant[s] be ordered to amend its response to [RFP No. 38] and produce supplemental responses within 10 days of the Court's ruling."  Id.

## 2. Defendants' Opposition

### a. Background

In the Opposition, Defendants state that this case arises from a "use-of-force" encounter where Hemet Police Department ("HPD") Officer Sobaszek and California Highway Patrol ("CHP") Officer Bell conducted a "night traffic stop" of Plaintiff Ryan Gadison, and Gadison did not stop the car immediately, but instead continued until he could pull over into a residential driveway.  ECF No. 48, Opp'n at 1.  According to Defendants, the officers learned Gadison had

a suspended driver's license, Plaintiffs became non-compliant and physically resisted the officers, Plaintiffs' dog bit an officer, and the officers detained and arrested Plaintiffs.  Id. at 2.

As discussed, regarding Plaintiffs' RFP No. 38, Defendants objected in a supplemental response that it was irrelevant, vague, ambiguous, and compound; potentially sought material protected by "law enforcement privileges," including "the federal law enforcement investigative privilege" and the "federal executive deliberative process and official information privileges"; and potentially sought materials protected by attorney-client and work product privilege.  Id. at 2-3.  Thus, Defendants offered to produce documents in response to RFP No. 38 only under significantly narrowed parameters, then averred that under these parameters, Defendants were "unable to locate records responsive to this request."  Id. at 3.

b. Argument

Defendants argue that the officers in this case have a federal constitutional right to privacy in their personnel records and that "federal common law also recognizes a privilege for government personnel files and official records under the official information privilege."  Id. at 3-4 (citing Sanchez v. City of Santa Ana, 936 F.2d 1027, 1033 (9th Cir. 1990); Destacomento Gonzalez v. City of Garden Grove, No. CV 05-1506 CAS (JTLx), 2006 U.S. Dist. LEXIS 97148, at *11 (C.D. Cal. Dec. 4, 2006)).  Further, courts recognize a privilege in the executive or deliberative process of governmental agencies; "government documents or materials are privileged from disclosure where they reflect the advisory opinions, recommendations, or deliberations of officials as part of a process in which governmental decisions and policies are formulated."  Id. at 4 (citations omitted).

Defendants state that when deciding whether to order production of materials that jeopardize a respondent's privacy interests, the "court must balance the specific need . . . for the discovery sought against the burden imposed upon the responding party and/or the seriousness of the invasion of the responding party's interest in non-disclosure."  Id. (citation omitted).  Where the matters are privileged, the "balance of non-disclosure versus disclosure tilts toward non-disclosure as to all subject matters that have no relevance to the specific allegations at issue in the action, or to probative issues regarding officer honesty."  Id. (citing Dawson v. Ocean Twp., No. 09-6274 (JAP), 2011 U.S. Dist. LEXIS 25545, at *63-64 (D.N.J. Mar. 14, 2011)).[1]

Defendants include the Declaration of HPD Sergeant Josiah Douglas in Support of Defendant City of Hemet's Response to [RFPs], Set One Propounded by Plaintiff Mariah Hereford ("Douglas Declaration" or "Douglas Decl."), who asserts, inter alia, that: (1) he is responsible for maintaining personnel files for HPD; (2) in the course of conducting its operations, the HPD generates "official information," including personnel files, which it

---

[1] For example, in a civil rights case where the operative claims only sounded in excessive force, at least one court held that "officer personnel file information was only discoverable as to past allegations of excessive force, or past allegations of officer dishonesty, where discipline was imposed."  Id. (citing Roettgen v. Foston, No. 13-cv-1101-GPC-BGS, 2016 U.S. Dist. LEXIS 60047, at *10-13 (S.D. Cal. May 4, 2016)).

maintains confidentially; (3) official information includes information gathered and developed during investigations of personnel complaints; (4) Sergeant Douglas reviewed the requested information that the HPD claims is privileged and personally asserts that the information contained in the relevant files is privileged; (5) disclosure of official information developed during the creation of personnel files "can disrupt the vital, day-to-day operations of the [HPD]; . . . affect the morale of [HPD] personnel; and frustrate the legitimate purposes of gathering the information"; (6) disseminating the requested official information would threaten privacy interests because it could include healthcare, financial, and personally identifying information; and (7) "plaintiff's request is unduly burdensome" because it seeks personnel records "which would include voluminous information" that it would require unreasonable time and expense to gather, including "days of retrieval, review and potential redaction of thousands of documents." ECF No. 48, Opp'n at 6-10 (Douglas Decl.).

Defendants thus request that the Court deem their supplemental responses to RFP No. 38 sufficient and deny the Motion to Compel a further response.  Id. at 5.

### 3.  Plaintiffs' Reply

In their Reply, Plaintiffs first argue that Defendants' Opposition "fails to address what, if any, information would be threatened by disclosure of complaints, allegations, and lawsuits against the entity Defendant"; such basic information would be required to assert a valid claim of privilege.  ECF No. 49, Reply at 2 (emphasis in original) (citing Kelly, 114 F.R.D. at 669-70).

Second, Plaintiffs state that if documents responsive to RFP No. 38 exist, they "agreed that identifying information of non-incident-involved officers, employees, and witnesses could be redacted to protect purported privacy rights," but that "[n]one of the cases cited by Defendant addresses these parameters."  Id. (citations omitted).  In fact, one of the cases Defendants cite in the Opposition—Martinez v. City of Stockton, 132 F.R.D. 677 (E.D. Cal. 1990)—supports requiring disclosure when a municipality is named in a § 1983 excessive force suit because "the evidence used against the city may necessarily include evidence of past misconduct on the part of its officers."  Id. (citing Martinez, 132 F.R.D. at 683).

Third, Plaintiffs assert that Defendants have failed to properly claim the governmental privilege because they have failed to "address what, if any, information would be threatened by disclosure of complaints, allegations, and lawsuits against the entity Defendant."  Id. at 3 (emphasis in original) (citations omitted).  Again, Defendants relied on cases in the Opposition that support disclosure.  In Gonzalez v. City of Garden Grove, for example, the court held in its motion in limine proceedings that while "'evidence of prior litigation or incidents involving the officers is not admissible for the purpose of proving liability against the officers . . . evidence of other similar acts may be admissible to establish a municipal policy or practice pursuant to plaintiff's Monell claim against the City.'"  Id. (emphasis omitted) (quoting Gonzalez, No. CV 05-1506 CAS (JTLx), 2006 WL 5112757, at *2 (C.D. Cal. Dec. 4, 2006)).

Finally, Plaintiffs argue that Defendants have failed to justify their blanket assertion of the deliberate process privilege and that, once again, Defendants cited cases that support

disclosure in these circumstances.  Id.  In N.L.R.B. v. Sears, Roebuck & Co., for example, the Supreme Court held that while internal communications received by an NLRB decisionmaker might be privileged under the Freedom of Information Act, Congress still requires disclosure of "'final opinions,' 'statements of policy and interpretations which have been adopted by the agency,' and 'instructions to staff that affect a member of the public.'"  Id. (quoting 421 U.S. 132, 152-53 (1975)).  Here, thus, "[c]omplaints, allegations, and lawsuits that the City has received and has acted upon or decided not to act upon" are "not protected from disclosure." Id.

## II.     DISCUSSION

### A.      General Legal Standards Regarding Discovery

Rule 26(b)(1) governs the scope of permissible discovery and provides:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Relevancy, for purposes of discovery, "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." Nguyen v. Lotus by Johnny Dung Inc., No. 8:17-cv-01317-JVS-JDE, 2019 WL 3064479, at *1 (C.D. Cal. June 5, 2019) (internal citations and quotation marks omitted).  "Generally, the purpose of discovery is to remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute." Duran v. Cisco Sys., Inc., 258 F.R.D. 375, 378 (C.D. Cal. 2009) (internal citations and quotation marks omitted).

Because discovery must be both relevant and proportional, the right to discovery, even plainly relevant discovery, is not limitless. See Fed. R. Civ. P. 26(b)(1); Nguyen, 2019 WL 3064479, at *1.  Discovery may be denied where: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)."  Fed. R. Civ. P. 26(b)(2)(C).

"The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1).  The party opposing discovery then has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections." Bryant v. Ochoa, No. 07cv200 JM (PCL), 2009 WL 1390794, at *1 (S.D. Cal. May 14, 2009).  "The party opposing discovery is 'required to carry a heavy burden of showing' why discovery should be denied." Reece v. Basi, No. 2:11-CV-2712

TLN (AC), 2014 WL 2565986, at *2 (E.D. Cal. June 6, 2014), aff'd, 704 F. App'x 685 (9th Cir. 2017) (quoting Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975)).

Finally, "[t]he district court enjoys broad discretion when resolving discovery disputes, which should be exercised by determining the relevance of discovery requests, assessing oppressiveness, and weighing these factors in deciding whether discovery should be compelled." United States ex rel. Brown v. Celgene Corp., No. CV 10-3165 GHK (SS), 2015 WL 12731923, at *2 (C.D. Cal. July 24, 2015) (internal citations and quotation marks omitted).

### B.   Privileges Relevant to Discovery of Information from Local Law Enforcement Agencies

#### 1.   Attorney-Client and Work Product Privileges

"The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice."  United States v. Sanmina Corp., 968 F.3d 1107, 1116 (9th Cir. 2020) (citing Upjohn Co. v. United States, 449 U.S. 383, 389 (1981)).  Whether information is covered by the attorney-client privilege is determined by an eight-part test:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived.

Id. (quoting U.S. v. Graf, 610 F.3d 1148, 1156 (9th Cir. 2010)).  A "'party asserting the attorney-client privilege has the burden of establishing the [existence of an attorney-client] relationship and the privileged nature of the communication.'"  Graf, 610 F.3d at 1156 (emphasis in original) (quoting United States v. Ruehle, 583 F.3d 600, 607 (9th Cir. 2009)).  This means that the "party asserting the privilege bears the burden of proving each essential element."  Id. (citations and internal quotation marks omitted).

The attorney-client privilege "may extend to communications with third parties who have been engaged to assist the attorney in providing legal advice," as well as to communications with third parties "acting as agent" of the client.  Id. (citations omitted).  While there are contexts in which communications with attorneys for the purpose of non-legal advice are not privileged, generally, if a person hires a lawyer for advice, there is a rebuttable presumption that the lawyer is hired to give legal advice.  Id. (citing United States v. Chen, 99 F.3d 1495, 1501 (9th Cir. 1996)).

There are several ways by which parties may waive the attorney-client privilege.  First, the privilege may be destroyed by "express waiver" where a party voluntarily discloses privileged documents to a third-party not bound by the privilege, "or otherwise shows disregard for the privilege by making the information public."  Bittaker v. Woodford, 331 F.3d 715, 719

(9th Cir. 2003).  Second, "implied waiver" waives the privilege where a party "put[s] the lawyer's performance at issue during the course of litigation," which is meant to prevent parties from "abus[ing] the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials."  Id. at 718-19.  Finally, "subject matter waiver" operates such that "voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to all other such communications on the same subject." Weil v. Inv./Indicators, Rsch. & Mgmt., Inc., 647 F.2d 18, 24 (9th Cir. 1981).

Relatedly, the "work product doctrine is a qualified protection limiting discovery of 'documents and tangible things' prepared by a party or his or her representative in anticipation of litigation or trial."  Jones v. Hernandez, 322 F.R.D. 411, 412 (S.D. Cal. 2017) (citing Admiral Ins. Co. v. U.S. Dist. Court for Dist. Of Ariz., 881 F.2d 1486, 1494 (9th Cir. 1989)).  The party claiming work product protection bears the burden of establishing that the work product doctrine applies.  United States v. Richey, 632 F.3d 559, 566 (9th Cir. 2011).  "A party may obtain discovery of work product only on a showing of 'substantial need' and an inability to obtain equivalent information from other sources."  Hernandez, 322 F.R.D. at 412 (quoting Fed. R. Civ. P. 26(b)(3)(A)(ii)).  "Even when a court orders disclosure of work product, 'it must protect against disclosure of the mental impressions, conclusion, opinions, or legal theories of a party's attorney or other representative concerning the litigation.'"  Id. (quoting Fed. R. Civ. P. 26(b)(3)(B)).  These materials—otherwise known as "opinion" work product—represent the "core types of work product" that the doctrine was designed to protect.  Id. (citing Republic of Ecuador v. Mackay, 742 F.3d 860, 870 n.3 (9th Cir. 2014)).

## 2.  Privacy Rights

When analyzing discovery requests and privilege issues in civil rights cases, "federal courts generally should give some weight" to constitutionally-based privacy rights.  Kelly v. City of San Jose, 114 F.R.D. 653, 656 (N.D. Cal. 1987); see also Noble v. City of Fresno, No. 1:16-CV-01690 DAD-BAM, 2017 WL 5665850, at *5 (E.D. Cal. Nov. 27, 2017).  The "party or person whose privacy is affected may either object to the discovery request or seek a protective order."  Noble, 2017 WL 5665850, at *5 (citing Laxalt v. McClatchy, 809 F.2d 885, 889 (D.C. Cir. 1987)).  Resolution of a privacy objection or request for a protective order "requires a balancing of the need for the information sought against the privacy right asserted."  Id. (citing Soto v. City of Concord, 162 F.R.D. 603, 616 (N.D. Cal. 1995)); see also Cook vs. Yellow Freight System, Inc., 132 F.R.D. 548, 551 (E.D. Cal. 1990) ("When an individual's right of privacy . . . conflicts with the public need for discovery in litigation, the competing interests must be carefully balanced.").  "A carefully drafted protective order could minimize the impact of the required disclosure."  Id. (citing Soto, 162 F.R.D. at 616; Kelly, 114 F.R.D. at 662, 666).

Regarding the disclosure of police files, courts have recognized that "these privacy interests must be balanced against the great weight afforded plaintiffs in civil rights cases against police departments."  Id.  "[T]hrough constitutional amendment and national legislation the people have made it clear that policies that inform federal civil rights laws are profoundly important."  Kelly, 114 F.R.D. at 660 (citations omitted).  In addition, defendants' "privacy concerns may be sufficiently protected with the use of a 'tightly drawn' protective order" that

limits who will have access to the materials in question.  Noble, 2017 WL 5665850, at *5 (quoting Kelly, 114 F.R.D. at 666).

### 3.  Official Information Privilege

"'Federal common law recognizes a qualified privilege for official information,'" which may include government personnel files.  Miller v. Pancucci, 141 F.R.D. 292, 299 (C.D. Cal. 1992) (quoting Sanchez v. City of Santa Ana, 936 F.2d 1027, 1033 (9th Cir. 1990)).  "In order to determine whether personnel files sought are privileged, courts must weigh potential benefits of disclosure against potential disadvantages; if the latter is greater, the official information privilege may bar discovery." Id. at 299-300 (citation omitted).  Such balancing "should be conducted on a case-by-case basis, determining what weight each relevant consideration deserves in the fact-specific situation that is before the Court." Id. at 300 (citing Kelly, 114 F.R.D. at 663).  This "balancing test has been moderately pre-weighted in favor of disclosure," which is consistent with the well-established notions that "'the burden of proving all elements essential to invoking any privilege [is] on the party seeking its benefits,'" that "'privileges are to be narrowly construed, and that doubts about their applicability are to be resolved in favor of disclosure.'" Id. (quoting Kelly, 114 F.R.D. at 662).

Factors to be considered in determining whether the official information privilege applies include but are not limited to: (1) "the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information"; (2) "the impact upon persons who have given information of having their identities disclosed"; (3) whether "the plaintiff's suit is non-frivolous and brought in good faith"; (4) "whether the information sought is available through other discovery or from other sources"; and (5) the "importance of the information sought to the plaintiff's case." Kelly, 114 F.R.D. at 663 (citation omitted).

There are, however, specific procedural requirements those who seek to invoke the official information privilege must satisfy before the Court will apply this balancing test to determine the discoverability of government information.  A "party who receives a discovery request must, within the time permitted by rule to respond or object, serve and file an objection that invokes the official information privilege by name." Pancucci, 141 F.R.D. at 300 (citing Kelly, 114 F.R.D. at 669).  "The [asserting] party must set forth this objection separately in response to each discovery question or request that would reach material covered by the privilege" and "must sufficiently identify the documents so as to afford the requesting party an opportunity to challenge the assertion of privilege." Id. (citations and internal quotation marks omitted) (emphasis added).

Additionally, "the party must submit, at the time it files and serves its response to the discovery request, a declaration or affidavit, under oath or subject to the penalty of perjury, from the head of the department which has control over the matter." Id. (citing Kerr v. U.S. Dist. Court for Northern Dist. of Calif., 511 F.2d 192, 198 (9th Cir. 1975)) (emphasis added).  This affidavit or declaration must contain:

(1) an affirmation that the agency generated or collected the material in issue and has in fact maintained its confidentiality (if the agency has shared some or all of the material with other governmental agencies it must disclose their identity and describe the circumstances surrounding the disclosure, including steps taken to assure preservation of the confidentiality of the material), (2) a statement that the official has personally reviewed the material in question, (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer, (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interest, (5) and a projection of how much harm would be done to the threatened interests if the disclosure were made.

Id. (quoting Kelly, 114 F.R.D. at 672).  A "general claim of harm to the public interest" is not sufficient to "overcome the burden placed on the party seeking to shield material from disclosure."  Id. (citation and internal quotation marks omitted).

### 4.  Deliberate Process Privilege

Federal common law recognizes the "deliberative process privilege," which "protects 'the decision-making processes of government agencies' in order to 'prevent injury to the quality of agency decisions.'"  Scalia v. Int'l Longshore & Warehouse Union, 336 F.R.D. 603, 609 (N.D. Cal. 2020) (quoting N.L.R.B. v. Sears, Roebuck & Co., 421 U.S. 132, 150-51 (1975)).  Under the privilege, "a government can withhold documents or prevent testimony that reflects advisory opinions, recommendations and deliberations comprising part of a process by which government decisions and policies are formulated."  N. Pacifica, LLC v. City of Pacifica, 274 F. Supp. 2d 1118, 1120-21 (N.D. Cal. 2003) (citation and internal quotation marks omitted).  The "underlying premise of the privilege is that agency decision-making might be impaired if discussions within the agency were subject to public review, thereby discouraging frank discussion of legal or policy matters."  In re McKesson Governmental Entities Average Wholesale Price Litig., 264 F.R.D. 595, 600 (N.D. Cal. 2009) (citation and internal quotation marks omitted).

The "Supreme Court has expressly recognized the privilege with respect to the decision-making processes of government agencies," and many lower courts, including in the Ninth Circuit, "have also extended the privilege to protect the decision-making processes of local legislators."  N. Pacifica, 274 F. Supp. 2d at 1121 (citations omitted).  Whether agencies or local legislators are involved, there are two requirements to establish the applicability of the privilege.  First, "the document or testimony must be predecisional—i.e., it must have been generated before the adoption of a policy or decision."  Id. (citing Sears, 421 U.S. at 152; F.T.C. v. Warner Commc'ns Inc., 742 F.2d 1156, 1161 (9th Cir. 1984)) (internal quotation marks omitted).  Second, "the document or testimony must be deliberative in nature, containing opinions, recommendations, or advice about policies or decisions."  Id. (citation and internal quotation marks omitted).  Thus, "[p]urely factual material that does not reflect deliberative processes is

not protected," but factual material that "is so interwoven with the deliberative material that it is not severable" is protected.  Id. (citation and internal quotation marks omitted).

The "deliberative process privilege is not absolute, and even if the privilege applies, a litigant may obtain discovery of protected material if the need for the documents outweighs the governmental interest in keeping the decision-making process confidential."  Scalia, 336 F.R.D. at 610 (citation and internal quotation marks omitted).  The Ninth Circuit has "defined the ambit of the deliberative process privilege . . . narrowly," and the agency bears the burden of showing that the privilege applies.  Sierra Club, Inc. v. United States Fish & Wildlife Serv., 925 F.3d 1000, 1011 (9th Cir. 2019); see also N. Pacifica, 274 F. Supp. 2d at 1122 ("The burden of establishing the application of the privilege is on the party asserting it" and "[e]ven if established, the privilege is strictly confined within the narrowest possible limits consistent with the logic of its principles.") (citation and internal quotation marks omitted).

"In deciding whether the qualified deliberative process privilege should be overcome, a court may consider the following factors: (1) the relevance of the evidence; (2) the availability of other evidence[;] (3) the government's role in the litigation[;] and (4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions."  N. Pacifica, 274 F. Supp. 2d at 1122 (citing FTC, 742 F.2d at 1161).  "Other factors that a court may consider include: (5) the interest of the litigant, and ultimately society, in accurate judicial fact finding, (6) the seriousness of the litigation and the issues involved, (7) the presence of issues concerning alleged governmental misconduct, and (8) the federal interest in the enforcement of federal law."  Id. (citing U.S. v. Irvin, 127 F.R.D. 169, 173 (C.D. Cal. 1989)).

Moreover, the privilege is not applicable in every context.  For example, the deliberative process privilege is "inappropriate for use in civil cases against police departments."  Soto, 162 F.R.D. at 612.  The deliberative process privilege "should be invoked only in the context of communications designed to directly contribute to the formulation of important public policy," and thus, it "would offer no protection at all to most of the kinds of information police departments routinely generate," including "internal affairs investigations" and "records of witness/police officer statements."  Id. (citations and internal quotation marks omitted).

### 5.  Law Enforcement Investigative Privilege

The law enforcement investigatory privilege is based on the idea that public disclosure of certain investigatory files could harm law enforcement efforts.  See Conan v. City of Fontana, No. EDCV 16-1261-KK, 2017 WL 2874623, at *4 (C.D. Cal. July 5, 2017).  The "Ninth Circuit has not expressly recognized the law enforcement [investigative] privilege," though "several courts within this circuit have acknowledged and applied it" in unreported opinions.  Lien v. City of San Diego, No. 21-cv-224-MMA (WVG), 2022 WL 134896, at *2 (S.D. Cal. Jan. 14, 2022) (citations omitted).  It is unclear, thus, whether and to what extent the law enforcement investigative privilege is good law within the Ninth Circuit.

To whatever extent the law enforcement investigatory privilege exists within the Ninth Circuit, "[t]he party claiming the privilege has the burden to establish its existence."  Conan,

2017 WL 2874623, at *4 (citing <u>Friedman v. Bache Hasley Stuart Shields, Inc.</u>, 738 F.2d 1336, 1341 (D.C. Cir. 1984)).  And "in order to assert the law enforcement investigation privilege, the party asserting the privilege must again make a substantial threshold showing by meeting certain elements including: (1) asserting a formal claim of privilege by the head of the department with control over the requested information; (2) the assertion of the privilege must be based on personal consideration by that official; and (3) the information for which the privilege is claimed must be specified with an explanation as to why it falls within the scope of the privilege." <u>Bradley v. Cnty. of San Joaquin</u>, No. 2:17-cv-02313 KJM AC, 2018 WL 4502481, at *5 (E.D. Cal. Sept. 20, 2018) (citations omitted).

### C.    Analysis

After careful review of the Motion to Compel, the Opposition, the Reply, and relevant law, the Court finds that: (1) the information Plaintiffs seek via RFP No. 38 is relevant to their claims and proportional to the needs of this case; (2) Defendants have failed to show that responding to RFP No. 38 would be unduly burdensome, especially in light of the seriousness of Plaintiffs' allegations and the importance of the desired materials to proving Plaintiffs' core claims; and (3) Defendants have failed to show that the materials sought by RFP No. 38 are protected from disclosure by any potentially applicable privilege.  As such, the Motion to Compel is granted and Defendants are ordered to produce materials responsive to RFP No. 38.

### 1.    The Discovery Plaintiffs Seek to Compel is Relevant, Proportional to the Needs of the Case, and Not Unduly Burdensome.

Relevancy for purposes of discovery is encompasses a broad scope of material.  Parties "may obtain discovery regarding <u>any</u> nonprivileged matter that is relevant to <u>any</u> party's claim or defense." Fed R. Civ. P. 26(b)(1) (emphases added).  This includes "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." <u>Nguyen v. Lotus by Johnny Dung Inc.</u>, No. 8:17-cv-01317-JVS-JDE, 2019 WL 3064479, at *1 (C.D. Cal. June 5, 2019).

Under this standard, RFP No. 38 seeks materials relevant to this case.  Plaintiffs bring several state claims and several federal claims, including deprivation of civil rights based on excessive and unreasonable use of force and a <u>Monell</u> claim for municipal liability, both pursuant to § 1983. <u>See</u> ECF No. 55, SAC at 28-32.  Defendants include the City of Hemet, a municipal entity. <u>See id.</u> at 1.  To maintain an action against a local government entity under § 1983 for monetary or equitable relief, a plaintiff must show that the entity's official or unofficial policy, custom, usage, or practice is the "moving force [behind] the constitutional violation." <u>Monell v. Dep't of Soc. Servs. of City of New York</u>, 436 U.S. 658, 694 (1978).  One of the ways a plaintiff can do so is by showing that an officer committed the alleged constitutional violation "pursuant to a governmental policy or a longstanding practice or custom." <u>Gillette v. Delmore</u>, 979 F.2d 1342, 1346-47 (9th Cir. 1992).  And further, as Plaintiffs argue in their Motion to Compel, a plaintiff "may also establish municipal liability by demonstrating that the alleged constitutional violation was caused by a failure to train municipal employees adequately," which a plaintiff can do in part by demonstrating the municipality "had a

training policy that 'amounts to deliberate indifference to the constitutional rights of the person with whom its police officers are likely to come into contact.'" Lowery v. City of L.A., No. CV 18-9644-R (JPR), 2018 WL 6680569, at *8 n.15 (C.D. Cal. Dec. 19, 2018) (quoting Blankenhorn v. City of Orange, 485 F.3d 463, 484 (9th Cir. 2007)).

Thus, where RFP No. 38 seeks materials related to allegations or complaints of the use of excessive force against Defendant City of Hemet and/or the HPD from January 2012 to the present, it appears plainly relevant to Plaintiffs' municipal liability claims because these materials will potentially bear on whether the HPD had a custom or practice of using excessive violence against the citizens of Hemet and whether Hemet's policies with respect to its police force amounted to deliberate indifference to its citizens' constitutional rights.  Put differently, the information sought by RFP No. 38 is relevant because "the evidence used against the city may necessarily include evidence of past misconduct on the part of its officers." Martinez v. City of Stockton, 132 F.R.D. 677, 682-83 (E.D. Cal. 1990), overruled on other grounds by Jackson v. Cnty. of Sacramento, 175 F.R.D. 653, 654 (E.D. Cal. 1997).

None of Defendants' arguments regarding relevance are availing; they are broad, boilerplate assertions on which Defendants rarely expand, such as "this request potentially calls for the production of documents or information that are not relevant to any party's claim or defense," and "plaintiffs are . . . attempting to obtain non-incident related material that is not relevant to this case."  See ECF No. 48, Opp'n at 2-4.  Defendants' position that only documents related to the specific incident of police force against Plaintiffs are relevant, even though Plaintiffs are asserting § 1983 claims for municipal liability, is contrary to the scope of information, and ultimately admissible evidence, that may be used to establish liability under Monell.

As Plaintiffs have shown that the information sought by RFP No. 38 is relevant to their claim, the Court must determine whether the effort needed to produce this information is disproportionate to the needs of the case.  Here, the burden shifts to Defendants to show that producing these materials would be unduly burdensome.  See Bryant v. Ochoa, No. 07cv200 JM (PCL), 2009 WL 1390794, at *1 (S.D. Cal. May 14, 2009).  This is a "heavy burden," Reece v. Basi, No. 2:11-CV-2712 TLN (AC), 2014 WL 2565986, at *2 (E.D. Cal. June 6, 2014), which Defendants have failed to carry.

First, the Court finds that the materials sought by RFP No. 38 are proportional to the needs of this case, considering the issues at stake in this action, the parties' relative access to the information, the importance of the discovery to resolving the issues, and that the likely benefit outweighs the alleged burden of production.  See Fed. R. Civ. P. 26(b)(1).  The issues at stake in this action are of paramount importance.  Plaintiffs allege that they suffered serious physical and emotional abuse at the hands of law enforcement.  They claim that they were racially profiled, falsely arrested, and beaten—that even their pets were beaten—all in front of young children. See generally ECF No. 55, SAC.  Plaintiffs allege deprivations of their Fourth and Fourteenth Amendment rights, among others.  See id.  "[T]hrough constitutional amendment and national legislation the people have made it clear that the policies that inform the federal civil rights laws are profoundly important." Kelly, 114 F.R.D. at 660.  As for the parties' access to information in

this case, and in civil rights cases against police departments in general, it is not likely that Plaintiffs can obtain information of comparable quality from any other source; thus, discovery of police personnel files is the only way through which Plaintiffs will have access to the information contained within.  See Soto, 162 F.R.D. at 616; Kelly, 114 F.R.D. at 667.

The Court also finds the discovery sought by RFP No. 38 is crucial to resolving issues at the heart of this action.  Plaintiffs claim that they were deprived of their constitutional rights due to a larger municipal custom of using excessive force, failing to properly train officers, and retaining officers who the City of Hemet was aware had dangerous propensities for abusing authority.  See, e.g., ECF No. 55, SAC at 30-32.  Discovery of materials related to excessive force complaints against the City of Hemet and/or HPD will certainly illuminate this issue.  Perhaps these documents will show that the HPD, in fact, rarely uses force against its citizens and takes swift disciplinary action when officers abuse their authority.  On the other hand, these materials might reveal that the HPD has a pattern of using unnecessary force, especially against minority residents, and of failing to train or reprimand officers whose conduct frequently leads to allegations of mistreatment.  Finally, as discussed further below, Defendants have not made any compelling arguments as to why producing the information sought by RFP No. 38 would be overly burdensome, especially not considering the aforementioned benefits of production.

Defendants' arguments that responding to RFP No. 38 would be unduly burdensome are unpersuasive.  In the body of the Opposition, Defendants offer only boilerplate language, such as "This request is also vague, ambiguous, compound and unduly burdensome as phrased, and is therefore not likely to lead to admissible evidence."  See ECF No. 48, Opp'n at 2.  The Court reminds Defendants that evidence does not need to be admissible to be relevant and subject to disclosure during discovery.  See Fed. R. Civ. P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable.").  Further, it is not enough to simply claim that making a production would be burdensome—any production during discovery will involve some level of time and effort—for their assertion to carry any weight, Defendants need to provide specific arguments as to why responding to RFP No. 38 would be overly burdensome in the context of this case.  See Bible v. Rio Properties, Inc., 246 F.R.D. 614, 619 (C.D. Cal. 2007) (finding that general or boilerplate objections are insufficient to meet objecting party's burden of explaining why discovery requests are improper).

The Douglas Declaration offers slightly more fulsome arguments as to why responding to RFP No. 38 would be unduly burdensome, such as that RFP No. 38 seeks personnel records that "would include voluminous information" which could require "days of retrieval and potential redaction of thousands of documents."  See ECF No. 48, Opp'n at 9 ("Douglas Decl.").  But such statements still fail to meet Defendants' high burden of persuasion.  For one, these are still relatively vague assertions that do little to help the Court understand the actual effort required to respond to RFP No. 38—for example, do Defendants estimate that "days" means one week or one month?  If the HPD keeps personnel records electronically, this should make compiling and redacting the "thousands" of potential documents in question more efficient, but the Court has no sense of these details from Defendants' Opposition and Douglas' Declaration.  The Court reminds Defendants that Plaintiffs are only requesting the production of documents related to excessive force allegations leveled against the City of Hemet and the HPD—if responsive

documents are truly as "voluminous" as Defendants suggest, this appears to be a rather compelling argument for these files' relevance and importance to Plaintiffs' excessive force claims against the municipality.

Secondly, Defendants represent the following:

> Defendants are willing to produce documents responsive to this request wherein there has been substantiated finding of an officers' excessive use of force, dishonesty, and/or racially discriminatory conduct for the time period of approximately five (5) years prior to the date of this Incident, if any such documents exist.  With these parameters set forth: after a thorough, careful, and diligent search, Responding Party was unable to locate records responsive to this request.

Id. at 3.  Since Defendants aver that they have already searched HPD's personnel files and such search produced zero "substantiated" findings of an officer using excessive force going back five years, the Court cannot conclude that it will not unduly burden Defendants to respond to RFP No. 38 and produce documents reflecting allegations, lawsuits, and complaints for the use of excessive force going back a few years further.

Relatedly, the Court rejects Defendants' attempt to unilaterally narrow the scope of RFP No. 38.  Because Plaintiffs bring Monell claims against the municipal entity Hemet, they endeavor to show that the specific constitutional violations Plaintiffs allegedly endured at the hands of officers were the result of a larger municipal practice or custom—a potentially decades-old pattern seen throughout the HPD.  As such, it would be inappropriate and against the thrust of our civil discovery system to narrow discovery here to only incident-involved officers and only dating back five years.

### 2.  Defendants Have Failed to Show that the Information Sought by RFP No. 38 is Protected from Disclosure by Any Relevant Privilege.

Before analyzing each individual privilege, the Court notes that Defendants appear to have asserted these privileges with little regard for how they could actually apply to this case. The assertions of privilege in the Opposition read as boilerplate restatements of the law, like defense counsel copy-and-pasted their "arguments" without any effort to tailor them to the case at bar or elucidate how the materials specifically sought by RFP No. 38 could be privileged. Even the Douglas Declaration appears pro forma—it addresses the disclosure of police personnel files generally without any specific reference to the facts of this case or the RFP at issue in this action.

#### a.  Attorney-Client and Work Product Privileges

The party asserting that materials sought in discovery are protected by the attorney-client privilege has the burden of proving each essential element of the privilege.  See U.S. v. Graf, 610 F.3d 1148, 1156 (9th Cir. 2010) (citations omitted).  And "[b]ecause it impedes full and free

discovery of the truth, the attorney-client privilege is strictly construed." Id. (citation and internal quotation marks omitted). Relatedly, the party claiming work product protection carries the burden of establishing that the discovery in question seeks documents and tangible things prepared by a party or its representative in anticipation of litigation or trial. See United States v. Richey, 632 F.3d 559, 566 (9th Cir. 2011); Jones v. Hernandez, 322 F.R.D. 411, 412 (S.D. Cal. 2017).

In the present case, Defendants failed to meet this burden. Defendants' arguments as to why RFP No. 38 seeks materials protected by the attorney-client and/or work product privileges are threadbare. Outside of merely asserting that the request "calls for production of documents or information that includes attorney-client privilege information . . . and/or the attorney work product protection," see ECF No. 48, Opp'n at 3, Defendants have made no effort to explain why documents related to excessive force complaints against HPD would necessarily include communications that meet the eight-part test applied in the Ninth Circuit to determine if materials are subject to attorney-client privilege, see United States v. Sanmina Corp., 968 F.3d 1107, 1116 (9th Cir. 2020), nor to describe how or why materials responsive to RFP No. 38 would include those prepared for litigation, see Hernandez, 322 F.R.D. at 412.

When marshalling materials responsive to RFP No. 38, Defendants are perfectly capable of redacting or withholding documents that they specifically find to be protected by the attorney-client or work product privileges, but a blanket assertion of those privileges will not prevent the discovery of relevant information. Plaintiffs, in fact, have already "agreed that materials prepared in anticipation of litigation should not be disclosed, and for excessive force lawsuits, Plaintiffs agreed to production of a list identified by location and year." See ECF No. 47, MTC at 2. Therefore, the Court finds that if handled properly, there is no meaningful threat that responding to RFP No. 38 will violate the attorney-client or work product privileges and that Defendants' arguments regarding these privileges fail.

b. Privacy Rights

As this matter involves a discovery request and privilege assertions in a civil rights case, the Court is cognizant of the need to protect both parties' and non-parties' privacy rights. See Kelly v. City of San Jose, 114 F.R.D. 653, 656 (N.D. Cal. 1987); Noble v. City of Fresno, No. 1:16-CV-01690 DAD-BAM, 2017 WL 5665850, at *5 (E.D. Cal. Nov. 27, 2017). That said, in resolving an objection against the disclosure of police files, such privacy interests must be balanced against the great weight afforded plaintiffs in civil rights cases against police departments, keeping in mind that a defendants' privacy concerns may be sufficiently safeguarded by a protective order limiting who will have access to the materials in question. See Kelly, 114 F.R.D. at 662, 666; Noble, 2017 WL 5665850, at *5.

Here, Defendants argue that RFP No. 38 "infringes on the privacy rights [of HPD] officers." ECF No. 48, Opp'n at 3. The Court finds, however, that the information Plaintiffs seek via RFP No. 38 is highly relevant and vitally important to their civil rights claims, especially to their Monell claims against the City of Hemet regarding the HPD. Because Plaintiffs bring claims pursuant to § 1983 against the City of Hemet, including for excessive use of force and for municipal liability, see ECF No. 55, SAC at 28-32, to maintain such an action

against Hemet, Plaintiffs must show that the entity's official or unofficial policy, custom, usage, or practice was the "moving force [behind] the constitutional violation."  See Monell, 436 U.S. at 694.  By this discovery Plaintiffs could discover materials related to HPD's history of excessive force allegations—and the City of Hemet's knowledge of and response to such allegations.  This weighs in favor of requiring disclosure of the materials sought in RFP No. 38.

Further, balancing the need for the discovery against Defendants' privacy interests, the Court notes that it has already entered a protective order that acknowledges "discovery activity in this action [is] likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting or defending this litigation may be warranted," and thus provides special protections for certain confidential materials including, but not limited to, "medical records, psychotherapeutic records, [] autopsy photographs," and certain "officer personnel records." ECF No. 18, Protective Order at 2, 7.  The Protective Order, thus, will minimize the impact of Defendants' disclosures in response to RFP No. 38.  See Soto v. City of Concord, 162 F.R.D. 603, 616 (N.D. Cal. 1995); Noble, 2017 WL 5665850, at *5.  Moreover, Plaintiffs argue, and the Court agrees, that "identifying information of non-incident-involved officers, public employees, and citizen complainants or witnesses could be redacted to protect privacy rights."  See ECF No. 47, MTC at 5.  Thus, to whatever extent materials responsive to RFP No. 38 include "health care information, financial information, [and] personally identifying information" for officers' family members, as Defendants suggest, see ECF No. 48, Opp'n at 8 (Douglas Decl.), Defendants are welcome to redact particularly sensitive confidential information in accordance with the Protective Order and Plaintiffs' reasonable concessions.

Therefore, the Court finds that Plaintiffs' need for the information sought outweighs Defendants' already well-protected privacy interests, which favors requiring Defendants to further and fully respond to RFP No. 38.

### c.   Official Information Privilege

In opposing the Motion to Compel, Defendants also raise the official information privilege.  ECF No. 48, Opp'n at 4.  To determine whether the materials sought by RFP No. 38 are protected from disclosure by the official information privilege, the Court must weigh the potential benefits of disclosure against the potential disadvantages, keeping in mind that this balancing test is "moderately pre-weighted in favor of disclosure," that the privilege is to be narrowly construed, and that doubts about its applicability are to be resolved in favor of disclosure.  Miller v. Pancucci, 141 F.R.D. 292, 299-300 (C.D. Cal. 1992).  Upon review of the relevant factors—delineated in Kelly, 114 F.R.D. at 663—the Court finds the following regarding application of the official information privilege to the present case.

Disclosure of the HPD files in question is unlikely to "thwart governmental processes by discouraging citizens from giving the government information" in the future, see id., because: (1) the information sought is subject to the Protective Order which will prevent it being exposed beyond the confines of this litigation, see ECF No. 18, Protective Order; (2) the Court agrees with Plaintiffs that Defendants can redact highly confidential information as part of this

disclosure, <u>see</u> ECF No. 47, MTC at 5, including personally identifying information of citizen complainants; and (3) Defendants have failed to make a "'substantial threshold showing'" as to why responding to RFP No. 38 would discourage citizens from giving information to the government, <u>see</u> <u>Conan v. City of Fontana</u>, No. EDCV 16-1261-KK, 2017 WL 2874623, at *4 (C.D. Cal. July 5, 2017) (quoting <u>Kelly</u>, 114 F.R.D. at 669).

Further, and relatedly, Defendants have failed to make a substantial threshold showing that responding to RFP No. 38 would negatively impact persons who have already given information to the government, <u>see</u> <u>Kelly</u>, 114 F.R.D. at 663, because Defendants have not explained how responding to RFP No. 38 would create a substantial risk of such citizens' identities being disclosed—especially considering that the material is subject to a Protective Order and Defendants may redact confidential identifying information.  Defendants make general assertions of harm, such as "[t]he release of this information, even subject to a protective order, poses an unacceptable and unnecessary risk" to "uninvolved third parties," and "providing this information to plaintiff and their lawyers would expose personal and identifying information," which would harm non-parties' privacy interests "even under a protective order." ECF No. 48, Opp'n at 8-9 (Douglas Decl.).  Defendants offer no basis for this assertion, and the Court "cautions the parties that protective orders," including the one issued by the Court in this case, "may not be disregarded."  <u>See</u> <u>Conan</u>, 2017 WL 2874623, at *5; <u>see also</u> <u>Kelly</u>, 114 F.R.D. at 664 ("[I]n the absence of special circumstances proved by law enforcement defendants, courts should ascribe little weight to a police department's purported interest in preserving the anonymity of citizen complainants.").

Additionally, Plaintiffs' suit appears to be non-frivolous and brought in good faith, <u>see</u> <u>Kelly</u>, 114 F.R.D. at 663, and Defendants have not shown otherwise.  The information sought by RFP No. 38 does not appear to be available through other discovery or from other sources because in civil rights cases against police departments, it is unlikely that plaintiffs can obtain information of comparable quality to police personnel files from any other source.  <u>See</u> <u>Soto</u>, 162 F.R.D. at 616; <u>Kelly</u>, 114 F.R.D. at 667.  And finally, as thoroughly discussed in this Order, the information sought via RFP No. 38 is central to the Plaintiffs' case.  <u>See</u> <u>supra</u> section II.C.1.

As for Defendants' assertion that disclosing "official information" in this case would make HPD officers "less likely to provide full and complete information in the future," "significantly negatively impact officers," and "inhibit the [HPD's] ability to frankly engage in self-critical analysis," ECF No. 48, Opp'n at 9-10 (Douglas Decl.), the Court finds such arguments baseless and unpersuasive.  <u>See</u> <u>Kelly</u>, 114 F.R.D. at 664 (finding "no empirical study supports the contention that the possibility of disclosure would make officers who participate (as respondents or as investigators) in internal affairs investigations less honest"); <u>Conan</u>, 2017 WL 2874623, at *5 ("[T]he fear that disclosure of internal affairs would likely result in reduced participation by officers has no empirical basis.").

Thus, the Court finds that the materials sought by RFP No. 38 are not protected from disclosure by the official information privilege.

/ / /

---

d.  Deliberative Process Privilege

Defendants further argue against the Motion to Compel by raising the deliberative process privilege, ECF No. 48, Opp'n at 4, under which "a government can withhold documents or prevent testimony that reflects advisory opinions, recommendations and deliberations comprising part of a process by which government decisions and policies are formulated."  N. Pacifica, LLC v. City of Pacifica, 274 F. Supp. 2d 1118, 1120-21 (N.D. Cal. 2003) (citation and internal quotation marks omitted).

However, where RFP No. 38 seeks documents reflecting investigations, allegations, lawsuits, and complaints for the use of excessive force against the HPD, the deliberative process privilege is inappropriate and does not apply.  This is because the deliberative process privilege "should be invoked only in the context of communications designed to directly contribute to the formulation of important public policy," and thus, it "would offer no protection at all to most of the kinds of information police departments routinely generate," including "internal affairs investigations" and "records of witness/police officer statements."  Soto, 162 F.R.D. at 612. Thus, the materials sought by RFP No. 38 from the HPD are not protected from disclosure by the deliberative process privilege.

Regarding materials RFP No. 38 seeks from Defendant City of Hemet, the decision-making processes of municipal legislators are potentially subject to the deliberative process privilege.  See N. Pacifica, 274 F. Supp. 2d at 1121.  However, even when potentially applicable, the deliberative process privilege is qualified, narrow, and the asserting party bears the burden of proof.  See Sierra Club, Inc. v. United States Fish & Wildlife Serv., 925 F.3d 1000, 1011 (9th Cir. 2019).  In the present case, Defendants have failed to meet their burden of showing that the documents sought from the City of Hemet were "generated before the adoption of a policy or decision" and "contain[] opinions, recommendations, or advice about policies or decisions," both of which are required in order for the deliberative process privilege to protect materials from disclosure.  See N. Pacifica, 274 F. Supp. 2d at 1121 (citations omitted).  In fact, Defendants failed to offer any explanation whatsoever as to why or how materials from the City of Hemet related to excessive force complaints against the HPD were predecisional and contributed to the formulation of public policy—Defendants merely describe the deliberative process privilege without connecting it to the facts of this case in any way.[2]

As such, the Court finds that the materials sought by RFP No. 38 are not protected from disclosure by the deliberative process privilege.

/ / /

/ / /

---

[2] Because Defendants fell short of their burden for invoking the deliberative process privilege, the Court declines to assess the factors courts apply to determine if the privilege should be overcome.  See N. Pacifica, 274 F. Supp. 2d at 1122 (listing relevant factors).

e.  Law Enforcement Investigative Privilege

Finally, Defendants object to RFP No. 38 on the grounds that it "potentially calls for the production of documents or information that are privileged from disclosure under the federal law enforcement investigative privilege."  See ECF No. 48, Opp'n at 2.  As discussed, the Ninth Circuit has not expressly recognized the law enforcement investigative privilege.  See Lien v. City of San Diego, No. 21-cv-224-MMA (WVG), 2022 WL 134896, at *2 (S.D. Cal. Jan. 14, 2022).  But assuming the law enforcement investigative privilege exists in this Circuit, Defendants have failed to carry their burden by making a "substantial threshold showing" that it applies in this case.  See Conan, 2017 WL 2874623, at *4.

Defendants provide the Douglas Declaration in support of their law enforcement investigative privilege objection.  See ECF No. 48, Opp'n at 6-11 (Douglas Decl.).  Sergeant Douglas states, inter alia, that he has "personally reviewed the information requested which the [HPD] claims is/are privileged," that disclosure of such material would "disrupt the vital, day-to-day operations of the [HPD]," and that such disclosure would "inhibit the [HPD's] ability to frankly engage in self-critical analysis" by negatively impacting officers' participation in internal affairs investigations.  Id. at 7-8, 10.

First, as discussed supra in section II.C.2.c, the idea that disclosure of internal affairs investigations related to excessive force claims would result in reduced or less forthcoming participation by HPD officers in future investigations is a troubling, uncompelling argument with no empirical basis.  Second, and also discussed supra in section II.C.2.c, Defendants have failed to specifically and convincingly explain why disclosure under the Protective Order would create a substantial risk of harm to law enforcement interests.  See Conan, 2017 WL 2874623, at *4.  In fact, Defendants have not made any specific showing that disclosure of these particular investigatory files would harm HPD's law enforcement efforts; they have not, for example, asserted that responding to RFP No. 38 would require disclosure of materials related to ongoing investigations and that such disclosure would jeopardize these open investigations.  Cf. Bradley v. Cnty. of San Joaquin, No. 2:17-cv-02313 KJM AC, 2018 WL 4502481, at *5 (E.D. Cal. Sept. 20, 2018) (defendants arguing for application of law enforcement investigative privilege in part because the requested discovery related to open and ongoing investigations involving parties to the case).

The purpose of the law enforcement investigative privilege is to "minimize disclosure of documents whose revelation might [actually] impair the necessary functioning . . . of law enforcement," 12 Fed. Proc., L. Ed. § 33:305, not to shield local police departments from any discovery request they might find inconvenient or uncomfortable.  And even the important law enforcement interests that the investigative privilege is meant to protect "may not be permitted to indefinitely frustrate the operation of the Federal Rules, the liberal discovery practices established by those Rules and—most importantly—the vigorous enforcements of the civil rights statutes."  Bradley, 2018 WL 4502481, at *5 (citation omitted).  The Douglas Declaration, however, offers no indication of an anticipated end date where the investigatory privilege may no longer apply to bar discovery of the allegedly privileged materials, and this Court would not

allow the "indefinite assertion of the ongoing investigation privilege" to "unreasonably delay[] the progress of this case and frustrat[e] the interests of justice."  See id. at *6.

Therefore, the Court finds that the materials sought by RFP No. 38 are not protected from disclosure by the law enforcement investigative privilege.

Thus, in sum, Plaintiffs have shown that they are entitled to the information sought in RFP No. 38 regarding documents and investigations reflecting allegations, lawsuits, and complaints for the use of excessive force against the City of Hemet and/or the HPD from January 2012 to the present, and Defendants have neither shown that producing these materials would be unduly burdensome, nor that they are protected from disclosure by any applicable privilege.  As such, Plaintiffs' Motion to Compel is GRANTED.

### III.    CONCLUSION

For the reasons set forth above, Plaintiffs' Motion to Compel is **GRANTED** and Defendants will be required to provide a substantive production in response to RFP No. 38.

**IT IS SO ORDERED.**