O

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

MARIAH HEREFORD, an individual;
MONETT HEREFORD, an individual;
   and
RYAN GADISON, an individual,

        Plaintiffs,

    v.

CITY OF HEMET, a municipal entity;
OFFICER M. BELL, an individual;
STATE OF CALIFORNIA, a public
   entity;
OFFICER P. SOBASZEK, an
   individual; and
DOES 4 through 25, inclusive,

        Defendants.

Case No. 5:22-cv-00394-JWH-SHKx

**ORDER DENYING PLAINTIFFS'
MOTION FOR SUMMARY
JUDGMENT [ECF No. 105] AND
GRANTING DEFENDANTS'
MOTIONS FOR SUMMARY
JUDGMENT [ECF Nos. 108 & 110]**

## I.  SUMMARY OF DECISION

Before the Court are three motions:

- the motion of Plaintiffs Mariah Hereford, Monet Hereford, and Ryan Gadison for summary judgment or partial summary judgment on Plaintiffs' eighth claim for relief against Defendant M. Bell;[1]
- the motion of Defendants City of Hemet and Officer P. Sobaszek for summary judgment on all of Plaintiffs' claims against them;[2] and
- Bell's motion for summary judgment on all of Plaintiffs' claims against him.[3]

The Court conducted a hearing on the Motions in September 2024.[4]  After considering the papers filed in support and in opposition,[5] as well as the arguments of counsel during the hearing, the Court **DENIES** Plaintiffs' Motion, **GRANTS** the City's Motion, and **GRANTS** Bell's Motion.

## II.  PROCEDURAL BACKGROUND

This action arises out of a March 2021 incident between Plaintiffs and the Hemet Gang Task Force.  In broad strokes, Plaintiffs allege that two members of the Task Force—Defendants Bell and Sobaszek—encountered Plaintiff Gadison while he was on

---

[1]    Pls.' Mot. for Summ. J. or Partial Summ. J. ("Plaintiffs' Motion") [ECF No. 105].

[2]    Defs. City of Hemet & P. Sobaszek's Mot. for Summ. J. (the "City's Motion") [ECF No. 108].

[3]    Def. Bell's Mot. for Summ. J. ("Bell's Motion") [ECF No. 110].

[4]    Minute Ord. of Hearing re the Motions (the "Minute Order") [ECF No. 128].

[5]    The Court considered the documents of record in this action, including the following papers:  (1) Second Am. Compl. (the "Amended Complaint) [ECF No. 55]; (2) Plaintiffs' Motion; (3) the City's Motion; (4) Bell's Motion; (5) Joint Exhibit [ECF Nos. 106 & 112]; (6) Joint Statement of Material Facts (the "Joint Statement") [ECF No. 107]; (7) Def.'s Amendment to Bell's Motion [ECF No. 111]; (8) Pls.' Objection in Opp'n to the City's Motion [ECF No. 113]; (9) Pls.' Opp'n to the City's Motion (the "City's Motion Opposition") [ECF No. 114]; (10) Pls.' Opp'n to Bell's Motion (the "Bell's Motion Opposition") [ECF No. 115]; (11) Def.'s Corrected Opp'n to Plaintiffs' Motion (the "Plaintiffs' Motion Opposition") [ECF No. 117]; (12) Pls.' Reply in Support of Plaintiffs' Motion ("Plaintiffs' Motion Reply") [ECF No. 118]; (13) Def.'s Reply in Support of Bell's Motion ("Bell's Motion Reply") [ECF No. 119]; (14) Defs.' Reply in Support of the City's Motion (the "City's Motion Reply") [ECF No. 120]; (15) Def.'s Suppl. to Mot. (the "Bell Supplemental Brief") [ECF No. 130]; (16) Defs.' Suppl. to Mot. (the "City's Supplemental Brief") [ECF No. 131]; and (17) Pl.'s Suppl. to Mot. (the "Plaintiffs' Supplemental Brief") [ECF No. 134].

his way home, then they stopped him and arrested him without probable cause.[6] Plaintiffs further allege that, after Gadison was arrested, Bell and Sobaszek unlawfully arrested Plaintiffs Mariah and Monett[7] and that, during each arrest, Bell and Sobaszek used excessive force.[8]

Plaintiffs filed their initial Complaint in March 2022, and they filed their operative Amended Complaint in March 2023. Through their Amended Complaint, Plaintiffs assert the following 11 claims for relief:

- violation of Bane Civil Rights Act (Cal. Civ. Code § 52.1);
- violation of Ralph Civil Rights Act (Cal. Civ. Code § 52.7);
- assault and battery;
- intentional infliction of emotional distress;
- false arrest and imprisonment;
- trespass to chattels;
- negligence;
- excessive and unreasonable force in violation of 42 U.S.C. § 1983;
- municipal liability under 42 U.S.C. § 1983, *see Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978);
- unlawful detention, seizure, and arrest in violation of 42 U.S.C. § 1983; and
- retaliatory arrest in violation of the First Amendment and 42 U.S.C. § 1983.

In April 2023, Defendants State of California, by and through the California Highway Patrol ("CHP"), and Bell moved to dismiss Plaintiffs' first through seventh claims, which constitute all of the claims asserted against CHP.[9] The Court granted that Motion to Dismiss in March 2024,[10] thereby dismissing CHP from this case, and the parties filed the instant three Motions in August 2024. The Motions are fully briefed.

### III. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See*

---

[6]     *See generally* Amended Complaint.

[7]     The Court refers to Plaintiffs Mariah and Monett Hereford by their first names to avoid confusion. No disrespect is intended.

[8]     *See generally id.*

[9]     Mem. of Points and Authorities for Defs.' Mot. to Dismiss Pls.' Second Am. Compl. (the "Motion to Dismiss") [ECF No. 57-1].

[10]     Ord. Granting Motion to Dismiss [ECF No. 73].

Fed. R. Civ. P. 56(a). When deciding a motion for summary judgment, the court construes the evidence in the light most favorable to the non-moving party. *See Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991). However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). The substantive law determines the facts that are material. *See id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* Factual disputes that are "irrelevant or unnecessary" are not counted. *Id.* A dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Under that standard, the moving party has the initial burden of informing the court of the basis for its motion and identifying the portions of the pleadings and the record that it believes demonstrate the absence of an issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the non-moving party bears the burden of proof at trial, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case. *See id.* at 325. Instead, the moving party need only prove that there is an absence of evidence to support the nonmoving party's case. *See id.* The party seeking summary judgment must show that "under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson*, 477 U.S. at 250.

If the moving party sustains its burden, the non-moving party must then show that a genuine issue of material fact exists that must be resolved at trial. *See Celotex*, 477 U.S. at 324. A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Anderson*, 477 U.S. at 252). The non-moving party must make this showing on all matters placed at issue by the motion as to which it has the burden of proof at trial. *See Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 252.

Furthermore, a party "may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). "The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." Advisory Committee Notes, 2010 Amendment, to Fed. R. Civ. P. 56. Reports and declarations in support of an opposition to summary judgment may be considered only if they comply with Rule 56(c) of the Federal Rules of Civil Procedure, which requires that they "be made on personal knowledge, set forth facts that would be admissible evidence, and show

affirmatively that the declarant is competent to testify to the matters stated therein."
*Nadler v. Nature's Way Prod., LLC*, 2015 WL 12791504, at *1 (C.D. Cal. Jan. 30, 2015);
*see also Loomis v. Cornish*, 836 F.3d 991, 996–97 (9th Cir. 2016) (noting that hearsay
statements do not enter into the analysis on summary judgment).

Finally, "[t]he Supreme Court has recognized that a genuine issue of fact does not
exist where a party's assertion of fact is plainly contradicted by a video recording."
*Williams v. City of Sparks*, 112 F.4th 635, 642 (9th Cir. 2024).  Thus, when ruling on a
motion for summary judgment, "a district court may properly view the facts in the light
depicted by bodycam footage and its accompanying audio, to the extent the footage and
audio blatantly contradict testimonial evidence."  *Hughes v. Rodriguez*, 31 F.4th 1211, 1218
(9th Cir. 2022) (emphasis omitted).  Indeed, even if some evidence contradicts the video
footage and suggests that material factual disputes exist, a district court must disregard
that contradictory evidence in favor of the clear video footage.  *See Williams*, 112 F.4th at
644.

## IV.  EVIDENTIARY OBJECTIONS

As a preliminary matter, Defendants object to some of Plaintiffs' evidence,
including Exhibits 1–3, 16, 20, 22, and 24, because Plaintiffs did not disclose those
exhibits to Defendants before submitting them to the Court.[11]  Plaintiffs do not dispute
that they failed to disclose those exhibits to Defendants.  Accordingly, the Court
**SUSTAINS** Defendants' objections to Exhibits 1–3, 16, 20, 22, and 24.  *See*
Fed. R. Civ. P. 37(c)(1) (prohibiting a party from relying upon information that was not
timely disclosed).

The parties also object to various other items of evidence filed with the Motions.
"[O]bjections to evidence on the ground that it is irrelevant, speculative, and/or
argumentative, or that it constitutes an improper legal conclusion are all duplicative of the
summary judgment standard itself"; they are thus "redundant" and need not be
considered.  *Burch v. Regents of Univ. of California*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal.
2006); *see also Anderson*, 477 U.S. at 248 ("Factual disputes that are irrelevant or
unnecessary will not be counted.").  The Court therefore **OVERRULES** all such
objections.  Additionally, the Court need not consider some of the evidence to which the
parties have objected, in order to decide the Motions.  Objections not specifically
addressed are **OVERRULED**.

---

[11]     *See generally* Joint Exhibit.

# V.  UNCONTROVERTED FACTS

The material facts set forth below are sufficiently supported by admissible evidence and are uncontroverted.  They are "admitted to exist without controversy" for the purpose of summary judgment.  *See* Fed. R. Civ. P. 56(e)(2); L.R. 56-3.  The court deems a fact undisputed when the parties' "disputes" of that fact are merely restatements of the same fact, they fail to actually contradict the substance of a fact, or they argue the relevancy and materiality of an otherwise undisputed fact.  *See* Fed. R. Civ. P. 56(e)(2); L.R. 56-3.

## A.    Gadison's Arrest

On the evening of March 31, 2021, Gadison was driving to the home of his fiancée, Mariah, when he passed the patrol car of CHP Officer Bell and Hemet Police Detective Sobaszek, both of whom were members of the Hemet Gang Task Force.[12]  Gadison's vehicle did not have a front license plate.[13]  After Gadison passed them, Sobaszek—without consulting Bell—made a U-turn to follow Gadison into Mariah's driveway, where Gadison stopped his car and honked the horn.[14]  Gadison intended the noise to alert Mariah and her mother, Monett, that Gadison was home and that the police followed him.[15]

Bell and Sobaszek parked behind Gadison, and Bell approached the passenger side of Gadison's vehicle while Sobaszek approached the driver's side.[16]  Meanwhile, Mariah stepped out of her house and yelled to Monett that Gadison had been pulled over.[17]  Monett joined Mariah outside, and both of them began to film the incident.[18]  Throughout those events, Mariah and Gadison's children remained on the doorstep of the home while the Herefords' dogs were barking outside.[19]

---

[12]    Joint Statement Nos. 2, 5, 6, & 8.

[13]    *Id.* at No. 209.

[14]    *Id.* at Nos. 12, 16, & 159; *see also* Joint Exhibit, Ex. 8 (the "Bell Deposition") [ECF No. 106] 92:2-22.

[15]    Joint Statement No. 16.

[16]    *Id.* at No. 24.

[17]    *Id.* at Nos. 32-34.

[18]    *Id.* at Nos. 17, 35, & 36.

[19]    *Id.* at No. 103; *see also* Joint Exhibit, Ex. 23 (the "Monett Video") [ECF No. 112].

Sobaszek asked Gadison for his proof of insurance and registration, which Gadison was unable to provide.[20]  In response, Sobaszek said, "Okay, it's no big deal, man,"[21] and Gadison suggested that Sobaszek could run Gadison's plates.[22]  Gadison also admitted that he knew he did not have a front license plate because he did not affix it when he purchased the vehicle.[23]

Gadison then pleaded, "Please don't do this in front of my kids," to which Sobaszek responded, "Do what?"[24]  Sobaszek reassured Gadison that it was "just a traffic stop."[25]  Gadison began to explain that his kids would not understand,[26] but dispatch interrupted to inform Sobaszek that Gadison's license was suspended.[27]  Sobaszek relayed that information to Gadison,[28] who denied that his license was suspended and asked Sobaszek to run it again.[29]

Rather than re-run Gadison's license, Sobaszek donned latex gloves and asked Gadison whether the vehicle contained anything illegal.[30]  Gadison responded that it did not, and Sobaszek replied that he "had to ask" because Gadison seemed "amped up" over a "simple traffic violation."[31]  Gadison suggested that he was nervous because he was a Black man and there are "stereotypes" about Black men and white law enforcement officers.[32]

Sobaszek next directed Gadison to exit the car because he was driving without a valid license.[33]  In response, Gadison reached for his belongings, and Sobaszek instructed Gadison to "leave everything down."[34]  Gadison remained in the vehicle and asked

---

[20]     *See* Joint Exhibit, Ex. 15 (the "<u>Sobaszek Video</u>") [ECF No. 112] 0:00:11-33.

[21]     *Id.* at 0:00:33-39.

[22]     *Id.* at 0:00:34-40.

[23]     *Id.* at 0:00:43-48.

[24]     *Id.* at 0:01:15-20.

[25]     *Id.* at 0:01:23-25.

[26]     *Id.* at 0:01:30-38.

[27]     *Id.* at 0:01:35-40; Joint Statement No. 167.

[28]     *Id.* at No. 40.

[29]     Sobaszek Video 0:01:40-0:02:06.

[30]     *Id.* at 0:02:15-18.

[31]     *Id.*

[32]     *Id.* at 0:02:18-43.

[33]     *Id.*; *see also* Joint Statement No. 49.

[34]     Sobaszek Video 0:02:44-48.

Sobaszek to call Sobaszek's sergeant.[35]  Instead, Sobaszek opened the passenger door to Gadison's vehicle, and Gadison continued to fiddle with his phone, wallet, and keys.[36] Sobaszek told Gadison several times to leave his belongings in the car, but, rather than do so, Gadison yelled to Mariah to "get a little closer" in order to record Sobaszek with her phone.[37]  As Mariah moved closer, Sobaszek once again told Gadison to put down his phone and keys, and Gadison started to place his keys on his dashboard—only to reverse course and throw them out of the vehicle window, toward Mariah.[38]

Sobaszek continued to direct Gadison to put down his wallet and phone, which Gadison still held in his hands, and to exit the vehicle.[39]  When Gadison eventually obeyed, Sobaszek began to place Gadison in handcuffs.[40]  Simultaneously, Sobaszek repeatedly told Gadison to "stop" and "relax," but Gadison instructed Mariah to "shut [his car] door and lock it" and to "kick it."[41]  Monett remained a few feet away from the vehicle,[42] and Mariah moved even closer so that she could shove the passenger door with her knee.[43]  The door hit Sobaszek and did not close.[44]

While Sobaszek attempted to take Gadison into custody, Bell moved next to them at the driver's side door and instructed Mariah to back up.[45]  Monett moved closer to the vehicle, next to Mariah, and the pair demanded that Sobaszek and Bell explain why Gadison was being arrested.[46]  The officers told Monett and Mariah several times to "back up" and warned that they would take them "to jail" for obstructing justice.[47] While Monett and Mariah continued to argue with Sobaszek and Bell, Gadison yelled at Mariah to go to her dogs.[48]

---

[35]    *Id.* at 0:02:50-0:03:11.

[36]    *Id.* at 0:03:05-22.

[37]    *Id.*

[38]    *Id.* at 0:03:15-21.

[39]    *Id.* at 0:03:30-42.

[40]    *Id.* at 0:03:45-0:04:01.

[41]    *Id.* at 0:03:50-11; *see also* Joint Statement No. 230.

[42]    Joint Statement No. 172; *see also* Monett Video 0:05:20-25.

[43]    Joint Statement No. 64; *see also* Monett Video 0:05:20-25.

[44]    Monett Video 0:05:18-25.

[45]    Joint Statement No. 68.

[46]    Monett Video 0:05:30-45.

[47]    *Id.* at 0:05:40-55.

[48]    *Id.* at 0:05:57-06:05.

In response, Mariah retreated toward the house, while Monett remained in place.[49] After instructing Monett yet again to back up, Bell left Monett to take over Gadison's arrest from Sobaszek, who appeared to be struggling to take Gadison into custody.[50]  As Bell led Gadison to a police vehicle, Gadison yelled for someone—presumably Monett, who was standing beside the vehicle—to "kick [his] door shut and lock it."[51]

Gadison was ultimately charged with driving on a suspended license in violation of Cal. Veh. Code § 14601.1(a) and was issued a misdemeanor citation for resisting or obstructing a peace officer in violation of Cal. Penal Code § 148(a)(1).[52]

## B.  Monett's Arrest

When Sobaszek returned to Gadison's vehicle, Monett stood beside the car door and continued to film the scene with her phone.[53]  Sobaszek directed Monett to "back up" twice, but she did not move.[54]  Sobaszek then reached toward Monett, but she jerked away and asked why he was touching her.[55]  Sobaszek continued to reach for Monett, who yelled that she had "carpel tunnel," until Sobaszek eventually secured Monett's arms behind her back.[56]

Sobaszek then informed Monett that she was under arrest and instructed her to stop resisting,[57] and Monett responded that she had not done anything.[58]  Mariah began to approach Sobaszek, who told her to stand back.[59]  While Sobaszek led Monett to a police vehicle and attempted to search her, Monett shouted the words "excessive force," she told Sobaszek she did not "have any pockets," and she asked why he was searching her.[60]

---

[49]    *Id.* at 0:06:10-25.

[50]    *See id.*; *see also* Joint Statement Nos. 74 & 75.

[51]    Monett Video 0:06:35-40.

[52]    Joint Statement Nos. 146 & 147.

[53]    Monett Video 0:06:40-07:20; Sobaszek Video 0:05:25-5:30.

[54]    Sobaszek Video 0:05:25-32.

[55]    *Id.* at 0:05:28-32.

[56]    *Id.* at 0:05:32-35.

[57]    *Id.* at 0:05:50-56.

[58]    *Id.* at 0:05:57-6:03.

[59]    *Id.* at 0:06:15-20.

[60]    *Id.* at 0:06:20-6:56.

Monett was issued a misdemeanor citation for resisting or obstructing a peace officer in violation of Cal. Penal Code § 148(a)(1).[61]

## C.   Mariah's Arrest

Approximately 10 seconds after Sobaszek began to lead Monett away, the lights on Gadison's vehicle flashed and the alarm—which was controlled by the fob on Gadison's keychain—began to sound.[62]   Several officers approached the vehicle, and Mariah yelled to ask why they were "going through" Gadison's car.[63]

The officers then began walking toward Mariah with their flashlights pointed at the ground, and they asked about turning off the car alarm.[64]   Mariah told the officers that the keys were in Gadison's vehicle,[65] but Mariah in fact held the keys in her left hand.[66]   Bell turned back toward the vehicle, either in response to Mariah or in response to another officer, and, as he turned, Mariah stepped backward.[67]   Bell then turned around to face Mariah and reached to take the keys from her, but Mariah continued to move backward toward her garage, away from Bell.[68]   While Bell was reaching for the keys, one of the Herefords' dogs got loose and bit Bell's leg twice.[69]

The other officers approached, and Bell released Mariah, who moved toward Bell's legs, where both the dog and his weapon were located.[70]   Non-party Officer Ian Bailey shouted for Mariah to let go of the key, and she falsely insisted that she did not have it.[71]   Sobaszek grabbed Mariah's arm while Bell held the dogs.[72]   Non-party Officer Gomez instructed Mariah to place her hands behind her back.[73]   When Mariah did not

---

[61]   Joint Statement No. 151.

[62]   *Id.* at Nos. 177 & 178.

[63]   Joint Exhibit, Ex. 26 (the "Mariah Video") [ECF No. 112] 01:25-39.

[64]   *Id.* at 01:40-47; *see also* Joint Exhibit, Ex. 18 (the "Bailey Video") [ECF No. 112] 0:00:15-30.

[65]   Mariah Video 01:50-54.

[66]   Joint Statement No. 183.

[67]   Joint Exhibit, Ex. 19 (the "Gomez Video") [ECF No. 112] 00:30-33; Bailey Video 00:28-35.

[68]   *See* Bailey Video 00:30-38.

[69]   *Id.* at 00:38-45; *see also* Joint Statement No. 257.

[70]   Joint Statement Nos. 191-193; Bailey Video 00:50-59; Gomez Video 0:00:40-45.

[71]   Bailey Video 00:50-55; Joint Statement No. 191.

[72]   *See* Joint Statement No. 263; *see also* Bailey Video 00:50-01:00.

[73]   *See* Gomez Video 01:00-01:10.

comply, she was pushed to the ground.[74]  Mariah screamed that she hit her head, and non-party Officer Kari Meske took over the arrest and led Mariah to a police vehicle.[75]  Once under Meske's control, Mariah finally volunteered the keys, and either Meske or another officer used the keys to disengage the car alarm.[76]

Mariah was ultimately issued a felony citation for obstructing a peace officer and causing an injury to that officer, in violation of Cal. Penal Code § 148.10(a).[77]

# VI.  ANALYSIS

## A.   Section 1983 Claims

Plaintiffs assert three § 1983 claims against Bell, Sobaszek, and the City:

- unlawful arrest in violation of § 1983 and the Fourth and Fourteenth Amendments;
- excessive force in violation of § 1983 and the Fourth Amendment; and
- retaliation in violation of § 1983 and the First Amendment.

Plaintiffs also assert a § 1983 claim against the City pursuant to *Monell*.

As a threshold matter, the City moves for summary judgment on each of Plaintiffs' individual claims against it on the ground that it is well-established that municipalities may not be held vicariously liable for individual violations arising under § 1983.  *See, e.g.*, *Flores v. Cnty. of Los Angeles*, 758 F.3d 1154, 1158 (9th Cir. 2014).  The City is correct.  Accordingly, the City's Motion is **GRANTED** with respect to Plaintiffs' claims for unlawful detention, excessive force, and First Amendment retaliation, insofar as those claims are asserted against the City on a non-*Monell* basis.

Next, with respect to Plaintiffs' remaining claims, both Bell and Sobaszek assert that they are entitled to qualified immunity because they did not commit any clearly established constitutional violation.  In resolving questions of qualified immunity at the summary judgment stage, a court must undertake an individualized, two-pronged inquiry.  *See Cunningham v. Gates*, 229 F.3d 1271, 1282 (9th Cir. 2000).  The first prong asks whether the facts, taken in the light most favorable to the party asserting injury, show that

---

[74]   *See id.* at 01:18-01:30.

[75]   *Id.* at 01:30-01:40; *see also* Joint Exhibit, Ex. 21 (the "Meske Video") [ECF No. 112] 0:00:00-00:32.

[76]   Joint Statement Nos. 145 & 194.

[77]   *Id.* at No. 153.

the officer's conduct violated a constitutional right. *See Tolan v. Cotton*, 572 U.S. 650, 655–56 (2014). The second prong asks whether the right in question was "clearly established" at the time of the violation. *Id*. at 656. Thus, an officer will be denied qualified immunity only if (1) the facts alleged, taken in the light most favorable to the party asserting injury, show that the officer's conduct violated a constitutional right; and (2) the right at issue was clearly established at the time of the incident such that a reasonable officer would have understood his or her conduct to be unlawful in that situation. *See Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).

### 1.    Unlawful Arrest

"A lawful arrest requires officers to have probable cause." *Hill v. City of Fountain Valley*, 70 F.4th 507, 515 (9th Cir. 2023). To determine whether probable cause exists, a court must evaluate the "totality of the circumstances known to the officers at the time" of the arrest to decide whether those circumstances "suggest a fair probability that the suspect has committed a crime." *See id.* (quoting *Tatum v. City & Cnty. of San Francisco*, 441 F.3d 1090, 1094 (9th Cir. 2006)).

If an arrest is based upon a crime that is discovered during a traffic stop, then the officer must also have had a basis on which to conduct the traffic stop, *see Moreno v. Baca*, 431 F.3d 633, 640 (9th Cir. 2005), which exists when "the officer reasonably suspects that a traffic violation has occurred," *United States v. Miranda-Guerena,* 445 F.3d 1233, 1236 (9th Cir. 2006) (citing *United States v. Willis*, 431 F.3d 709, 714 (9th Cir. 2005)). Reasonable suspicion, in turn, "is formed by 'specific articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity.'" *United States v. Colin*, 314 F.3d 439, 442 (9th Cir. 2002) (quoting *United States v. Lopez–Soto*, 205 F.3d 1101, 1105 (9th Cir. 2000)). "The 'reasonable suspicion' necessary to justify such a stop 'is dependent upon both the content of information possessed by police and its degree of reliability.'" *Navarette v. California*, 572 U.S. 393, 397 (2014) (quoting *Alabama v. White*, 496 U.S. 325, 330 (1990)).

Additionally, the subjective intent of the officer is irrelevant to the Fourth Amendment analysis, *see Whren v. United States*, 517 U.S. 806, 813 (1996), and "qualified immunity applies when it was objectively reasonable for an officer to believe he or she had probable cause to make the arrest," *Hill*, 70 F.4th at 516. Stated differently, even if an officer incorrectly concludes that he may lawfully conduct an arrest, qualified immunity applies so long as the officer's mistake was objectively reasonable. *See Torres*, 648 F.3d at 1124.

### a.    Of Gadison

#### i.    By Bell

To the extent that Gadison asserts a wrongful arrest claim against Bell, Bell argues that he is entitled to summary judgment, both because Gadison was not wrongfully arrested and because Gadison has not satisfied his burden to show that any potential violation was clearly established.[78]  In response, Gadison appears to concede that he was driving with a suspended license, that he did not have a front license plate on his vehicle, and that his windows were impermissibly tinted.[79]  Gadison nevertheless argues that the officers lacked reasonable suspicion to conduct the initial traffic stop because (1) Gadison's windows were rolled down when he passed the officers, so they could not have seen that Gadison's windows were tinted; and (2) Sobaszek failed to notice Gadison's missing front license plate, which means that Sobaszek instead decided to stop Gadison because of Gadison's race.[80]

With respect to the first of those theories, the Court agrees with Gadison that a key issue of fact—whether Gadison's windows were up or down when he passed the officers—cannot be resolved at this stage.  There is no video footage showing whether Gadison's windows were down, and the parties have offered conflicting testimony about that fact.[81]  Thus, the Court cannot determine whether the officers knew that Gadison's windows were tinted without improperly crediting one party's testimony over the other.

Gadison provides no evidence, however, to support his theory that the officers somehow failed to notice Gadison's missing front license plate.  At best, Gadison argues that, although Sobaszek testified that he noticed the missing license plate when Gadison drove past the officers in the opposite direction, a juror might nevertheless conclude that Sobaszek failed to see Gadison's missing front license plate for two reasons.  First, Sobaszek "silently walked to the front of the car to look at the front license plate area" before telling Gadison the reason for the traffic stop.[82]  Second, Gadison is "a black man driving a newer car in a predominately African American neighborhood."[83]  Neither of

---

[78]    *See generally* Bell's Motion; Bell's Motion Reply.

[79]    *See* Bell's Motion Opposition 9:8-10:17.

[80]    *See id.*

[81]    *See* Joint Exhibit, Ex. 6 (the "Gadison Deposition") [ECF No. 106] 234:2-12 (testifying that the windows were down); Bell Deposition 81:21-82:2 (testifying that the windows were up and tinted); Joint Exhibit, Ex. 7 (the "Sobaszek Deposition") [ECF No. 106] 41:10-18 (testifying that the driver's side window was up and tinted).

[82]    *See* Bell Motion Opposition 10:5-9.

[83]    *Id.* at 20:10–11.

those facts is sufficient to create a dispute regarding Sobaszek's otherwise uncontroverted testimony that he noticed Gadison's missing front license plate when Gadison drove past him.

Accordingly, the Court concludes that no reasonable jury could conclude that Bell violated Gadison's constitutional right to be free from a wrongful arrest. Therefore, Bell is entitled to summary judgment in his favor on Gadison's unlawful arrest claim.

### ii. By Sobaszek

Sobaszek also moves for summary judgment on Gadison's wrongful arrest claim.[84] Gadison's arguments are identical to those that he made with respect to his claim against Bell,[85] so the Court concludes that Sobaszek is also entitled to summary judgment in his favor on Gadison's unlawful arrest claim.

### b. Of Mariah

### i. By Bell

Bell and Mariah both argue that they are entitled to summary judgment with respect to Mariah's wrongful arrest claim. According to Mariah, "[t]here are no material facts in dispute" because "Bell viciously attacked Mariah without a warrant, warning, or emergency circumstances"[86] and because a "reasonable factfinder would conclude that Officer Bell's warrantless search of Plaintiff Mariah Hereford violated her Fourth Amendment rights."[87] Bell agrees that there are no material facts in dispute, but, according to Bell, the undisputed facts demonstrate that his actions were entirely lawful.[88]

As a threshold matter, the basis for Mariah's wrongful arrest claim is somewhat unclear. Mariah appears to argue that Bell seized her when he rushed toward her or when he held her arm while trying to take Gadison's keys from her,[89] but "[a] seizure does not occur if an officer applies physical force in an attempt to detain a suspect" but is "ineffective" in doing so. *United States v. Hernandez*, 27 F.3d 1403, 1407 (9th Cir. 1994). It is undisputed that Bell failed to take Gadison's keys from Mariah and that Bell failed to

---

[84]    *See* City's Motion 20:16-28.

[85]    *See* City's Motion Opposition 8:9-9:8.

[86]    Plaintiffs' Motion 4:4-6.

[87]    *Id.* at 19:4–5.

[88]    *See generally* Bell's Motion.

[89]    Bell's Motion Opposition 13:8-10; *see also* Plaintiffs' Motion 11:2–20.

detain her,[90] so those attempts cannot serve as the basis for Mariah's wrongful arrest claim.  *See id.*

Similarly, Mariah argues that Bell's attempt "forcibly [to] retrieve the car keys that [Mariah] held in her hand" was an unlawful search because Mariah had a property interest in the keys and she held them while she was standing on the curtilage of her home.[91]  But while the Fourth Amendment sometimes protects against "physical 'intrusion[s]'" onto private property, *Kyllo v. United States*, 533 U.S. 27, 34 (2001), such physical intrusions must still violate "an expectation of privacy that society is prepared to consider reasonable," *United States v. Jefferson*, 566 F.3d 928, 933 (9th Cir. 2009); *see also United States v. Jones*, 565 U.S. 400, 404 (2012) (recognizing that the government conducts a search when it "physically occupie[s] private property for the purpose of obtaining information").  It is unclear how Mariah could have had any expectation of privacy in Gadison's keys, which dangled from her fingers in plain view of the officers.  And even if Mariah could establish such an expectation, she did not allege in her Amended Complaint that Bell conducted an unlawful search, and, accordingly, she may not move for summary judgment on that claim now.[92]

Next, insofar as Mariah's wrongful arrest claim arises out of her arrest for resisting or obstructing a peace officer in violation of Cal. Penal Code § 148.10(a), Bell did not conduct Mariah's arrest, and, thus, he cannot be held liable for it.[93]  And, in any event, the arrest was lawful.  A violation of that statute occurs when any person "willfully resists a peace officer in the discharge or attempt to discharge any duty of his or her office or employment" and, by willfully resisting a peace officer, "proximately causes death or serious bodily injury to a peace officer."  Cal. Penal Code § 148.10(a).  The uncontroverted evidence shows that (1) Mariah interfered with the officers' attempts to take Gadison into custody; (2) Mariah disobeyed several of the officers' instructions; (3) Mariah misled the officers regarding the location of Gadison's keys; (4) Mariah refused to turn Gadison's keys over to the officers despite their several requests; and (5) Mariah's dog bit Bell twice in connection with his attempt to recover Gadison's keys from her.  And while Mariah characterizes those actions as momentary disobedience that did not constitute a violation § 148.10(a), the Court is hard-pressed to conclude that any reasonable juror could agree.

---

[90]    *See* Joint Statement No. 145 (noting that Mariah turned the keys over to Officer Meske after she was in custody).

[91]    *See* Plaintiffs' Motion 11:8–10.

[92]    *See generally* Amended Complaint.

[93]    *See* Joint Statement Nos. 263 & 267-269 (noting that other officers conducted Mariah's arrest).

Finally, even if a reasonable juror could conclude that Mariah's actions amounted to mere momentary disobedience, Mariah has not met her burden to establish that the unconstitutionality of her arrest was clearly established at the time of that arrest. Indeed, in arguing otherwise, Mariah cites only one Ninth Circuit case: *Mackinney v. Neilsen*, 69 F.3d 1002 (9th Cir. 1995). In *Mackinney*, police officers arrested the plaintiff for underlining a message written in sidewalk chalk before complying with police orders. *See id.* at 1005. The Ninth Circuit held that the arrest was not supported by probable cause because it was unclear whether the plaintiff knew that the order had come from the police officers and because the plaintiff "refused to comply for only a few seconds." *Id.* at 1006. Those facts are not at all similar to the facts in this case, let alone similar enough to have put Bell on notice that Mariah's arrest violated clearly established law.

Accordingly, the Court concludes that Bell may properly assert the defense of qualified immunity on Mariah's wrongful arrest claim and that he is entitled to summary judgment in his favor on that claim.

### ii.    By Sobaszek

Sobaszek also moves for summary judgment on Mariah's claim for unlawful arrest. In her Opposition, Mariah exclusively addresses Bell's actions in attempting to take the keys from Mariah, and she makes the same arguments that she raised with respect to her claim against Bell.[94] Accordingly, the Court concludes that Sobaszek is also entitled to qualified immunity and summary judgment in his favor on Mariah's claim for unlawful arrest.

### c.    Of Monett

### i.    By Bell

Bell argues that he is entitled to summary judgment on Monett's wrongful arrest claim because he did not arrest Monett. The Court agrees. It is undisputed that Sobaszek conducted Monett's arrest while Bell was in the process of taking Gadison into custody,[95] and Monett's arguments regarding her wrongful arrest rely entirely upon Sobaszek's conduct.[96] Because Bell cannot be liable for an arrest in which he was not involved, *see Hill*, 70 F.4th at 514, Bell is entitled to summary judgment in his favor with respect to Monett's claim for unlawful arrest.

---

[94]    *See* City's Motion Opposition 13:11-15:6 & 16:20-18:18.

[95]    *See* Joint Statement Nos. 77–80.

[96]    *See* Bell Motion Opposition 18:20-19:2.

### ii.    By Sobaszek

Sobaszek also moves for summary judgment on Monett's wrongful arrest claim.  In opposition, Monett argues that Sobaszek lacked probable cause to arrest Monett because she was exercising her First Amendment rights when she was arrested,[97] she "complied with all orders to which she had an opportunity to comply,"[98] and she "never touched Gadison's car door."[99]  Thus, according to Monett, she did not violate Cal. Penal Code § 148, and she could not be arrested for doing so.[100]

As an initial matter, Monett's characterization of her actions contradicts the video evidence in the record.  Although Monett contends, for example, that she "complied with all orders," Monett was instructed several times to back up before she was arrested, but she refused.[101]  And that refusal was neither momentary nor slow—rather, after disobeying earlier commands to back up, Monett stood still and remained silent while Sobaszek walked toward her and instructed her again that she needed to back up.[102]  That interaction occurred mere moments after Gadison told Monett and Mariah to "kick [his] door shut and lock it," before the officers had recovered Gadison's keys, and shortly after Monett crowded the officers while they arrested Gadison.[103]  Those actions do not constitute compliance or mere verbal protest.

Next, Monett misstates California law.  Under the applicable statute, "[e]very person who willfully resists, delays, or obstructs any public officer, peace officer, or an emergency medical technician . . . in the discharge or attempt to discharge any duty of his or her office or employment" is punishable by fine, imprisonment, or both. Cal. Penal Code § 148(a)(1).  Although the "fact that a person takes a photograph or makes an audio or video recording of a public officer or peace officer . . . does not constitute, in and of itself, a violation" of § 148(a)(1), *see id.* at § 148(g), the act of "refusing to move back pursuant to an order of a peace officer" has consistently been recognized as obstruction within the meaning of § 148.  *See, e.g.*, *Mam v. City of Fullerton*, 2013 WL 951401, at *4 (C.D. Cal. Mar. 12, 2013).  Similarly, while a momentary delay in responding to an officer's order does not constitute a violation of § 148, prolonged non-compliance—such as refusing to move a car after being asked to do so more than

---

[97]    City's Motion Opposition 10:22-11:5.

[98]    *Id.* at 11:14-15.

[99]    *Id.* at 12:4-5.

[100]    *See generally id.*

[101]    *See* Monett Video 0:05:40-55; Sobaszek Video 0:05:25-32.

[102]    *See* Monett Video 0:05:23-05:30.

[103]    *See id.* at 0:05:20-5:25.

once or "repeatedly def[ying]" an officer's commands—does. *See Mackinney*, 69 F.3d at 1008.

The decision of the California Court of Appeals in *In re Muhammed C.*, 95 Cal. App. 4th 1325 (2002), is instructive. There, the Court of Appeal held that the arrestee's repeated refusal to obey officers' commands to step away from a vehicle violated § 148 because that refusal "interrupted" the processing of a vehicle following a third-party's arrest and "delayed" the officers from carrying out their post-arrest activities. *See id.* at 1330. In that case, the arrestee was engaged in First Amendment activity, and he did not physically touch the vehicle that the police attempted to process nor pose any safety risk to the officers, but the California Court of Appeal nevertheless concluded that probable cause existed to support an arrest for a violation of § 148. *See id.* at 1328. Such is the case here. Although it was lawful for Monett to record the officers, it was not lawful for her to refuse to back away from Gadison's vehicle or to hinder the officers' efforts to conduct Gadison's arrest. *See id.*

Finally, even if Sobaszek lacked probable cause to arrest Monett, she has not met her burden to show that the violation was clearly established. In support of her wrongful arrest claim, Monett relies upon *Lewis v. City of New Orleans*, 415 U.S. 130 (1974), and *People v. Quiroga*, 16 Cal. App. 4th 961 (1993). In *Lewis*, the Supreme Court held that a Louisiana law making it illegal to "curse or revile or to use obscene or opprobrious language toward or with reference to any member of the city police while in the actual performance of his duty" violated the First Amendment. *Lewis*, 514 U.S. at 132. In *Quiroga*, the California Court of Appeal concluded that a defendant's refusal to provide officers with his name could constitute a violation of § 148. *See Quiroga*, 16 Cal. App. 4th at 972. Neither of those cases involves factual circumstances or legal issues similar to those here, and, thus, those cases cannot serve as clearly established law.

Accordingly, the Court concludes that Sobaszek is entitled to qualified immunity and summary judgment in his favor on Monett's claim for wrongful arrest in violation of the Fourth Amendment.

In summary, Bell's Motion and the City's Motion are **GRANTED** with respect to Plaintiffs' unlawful arrest claim, and Plaintiffs' Motion is **DENIED**. Bell and Sobaszek are entitled to summary judgment in their favor with respect to Plaintiffs' tenth claim for relief.

### 2.    Excessive Force

The Fourth Amendment prohibits an officer from employing excessive force when conducting a seizure. *See Torres*, 648 F.3d at 1123. Not all uses of force, however, are considered excessive. *See id.* Thus, when "evaluating a Fourth Amendment claim of

excessive force, courts ask whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them." *Glenn v. Wash. Cnty.*, 673 F.3d 864, 871 (9th Cir. 2011) (quotation marks omitted). That inquiry involves three steps. First, the court "must assess the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted." *Id.* (quotation marks omitted). Second, the court must "evaluate the government's interest in the use of force." *Id.* Third, the court must "balance the gravity of the intrusion on the individual against the government's need for that intrusion." *Id.*

The Supreme Court emphasized that "specificity is especially important in the Fourth Amendment context" and that "the question whether an officer has used excessive force requires careful attention to the facts and circumstances of each particular case." *Kisela v. Hughes*, 584 U.S. 100, 103-04 (2018) (alterations adopted). Thus, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). The "calculus of reasonableness" therefore "must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97.

Additionally, "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion," and "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.* at 396 (citation omitted). For those reasons, courts more readily conclude that an officer violated the Fourth Amendment if "the force used was gratuitous or violent." *See Hopson v. Alexander*, 71 F.4th 692, 705 (9th Cir. 2023). Meanwhile, although "less egregious police conduct" will sometimes violate the Fourth Amendment, such violations are unlikely to occur unless "the government interests at stake" are "correspondingly lower." *See id.* at 706.

### a.    Against Gadison

### i.    By Bell

Bell argues that he is entitled to summary judgment on Gadison's excessive force claim because no reasonable juror could conclude that Bell used excessive force against Gadison and because, even if Bell did use excessive force, it was not clearly established at the time of Gadison's arrest that the force used was unreasonable. The Court agrees.

As a threshold issue, Gadison contends that Sobaszek and Bell collectively "yanked Gadison's wrists and arms upward, flexing and buckling Gadison's shoulder and back muscles," "push[ed] and wrench[ed] Gadison against the cavity created by the open

driver's side door" despite "Gadison's non-resistance," and then "yanked Gadison away to a nearby police vehicle."[104]  Because Gadison does not distinguish between the force that Bell used and the force that Sobaszek used, it is difficult for the Court to perform the "individualized analysis [the Ninth Circuit] require[s] for resolving motions for summary judgment based on qualified immunity."  *See Cunningham*, 229 F.3d at 1289.  That infirmity, standing alone, weighs in favor of granting Bell's Motion.  *See id.*

But Bell is also entitled to summary judgment in his favor even if the Court assumes that Bell was the sole officer who used force against Gadison.  To start, in view of existing precedents, the force used against Gadison did not severely intrude on Gadison's Fourth Amendment rights.  The Ninth Circuit has previously concluded that "'yanking, pulling, jerking, and twisting' a person whose legs are pinned underneath a car seat" or "lift[ing]" someone constitutes only a "minimal" use of force, even where the arrestee suffered injuries because of the force.  *Williamson v. City of Nat'l City*, 23 F.4th 1146, 1152 (9th Cir. 2022).  The force used against Gadison was at most comparable to such force, and Gadison did not suffer any injuries.  Thus, the intrusion on Gadison's rights was minimal.

Next, although the governmental interest in using force to detain Gadison was relatively low, it was not nonexistent.  On the one hand, Gadison was "suspected of driving with a suspended license," which is a "potential crime[] of low . . . severity," *Thompson v. Rahr*, 885 F.3d 582, 586 (9th Cir. 2018), and there is little basis upon which the officers could have concluded that Gadison posed a serious or substantial safety threat to the officers or the public.  *See id.* at 587.  But on the other hand, Gadison was "actively resisting" the officers' attempts to take him into custody, including by encouraging Mariah and Monett to interfere with the arrest, and Gadison was not "compliant with the directions of law enforcement at all times," which would have made it difficult for the officers to conduct the arrest without the use of force.  *Id.*  Thus, there was some—albeit minor—governmental interest in using force to detain Gadison.

Third, balancing the intrusion upon Gadison's rights against the governmental interest in detaining Gadison, the Court concludes that no reasonable juror could find that Bell used unreasonable force against Gadison.  Before Gadison was arrested, he flouted instructions to release his belongings and to exit the car, he instructed Mariah and Monett to help him defy the officers' commands, and he committed at least three traffic violations.  Similarly, as Bell attempted to place Gadison under arrest, Gadison instructed Mariah to kick his car door shut—which caused the door to hit Bell—and he struggled against Bell's grasp.  In view of those actions, as well as the "modest nature of the force

---

[104]     *See* Bell's Motion Opposition 10:22–28.

used," Bell's actions were objectively reasonable. *Demarest v. City of Vallejo*, 44 F.4th 1209, 1226 (9th Cir. 2022).

Moreover, even if Bell did violate Gadison's right to be free of excessive force, Gadison has not established that the violation was clearly established at the time of the incident. Gadison provided two cases that he views as sufficient to establish the unconstitutionality of Bell's conduct: *Bernal v. Sacramento County Sheriff's Department*, 73 F.4th 678, 696 (9th Cir. 2023), and *Nelson v. City of Davis*, 685 F.3d 867, 879 (9th Cir. 2012). *Bernal* was not decided at the time of Gadison's arrest, so it could not clearly establish the law at the time of Gadison's arrest. And *Nelson* is inapposite. In that case, the police launched projectiles at college students who had not "engaged in violent behavior," "commit[ed] any chargeable offense," nor "actively resist[ed] or attempt[ed] to evade arrest." *See Nelson*, 685 F.3d at 880-81. Gadison, in contrast, committed three chargeable offenses, and he was being placed under arrest.

Accordingly, the Court concludes that Bell is entitled to qualified immunity and summary judgment in his favor with respect to Gadison's excessive force claim.

### ii.    By Sobaszek

Gadison's excessive force claim against Sobaszek rests upon the same allegations and arguments as Gadison's excessive force claim against Bell, and, as discussed above, Gadison does not distinguish between the force that Sobaszek used and the force that Bell used.[105] Accordingly, the Court concludes that Sobaszek is entitled to summary judgment in his favor on Gadison's excessive force claim for the same reasons that Bell is entitled to summary judgment in his favor on that claim.

### b.    Against Mariah

### i.    By Bell

Bell and Mariah each move for summary judgment on Mariah's excessive force claim.[106] Although the parties agree that the relevant facts are undisputed, they characterize those facts very differently. Mariah, for example, maintains that Bell "bull-rushed" her and attempted "forcibly [to] extract keys she was holding" by "twisting and wrestling her backwards as he snatched at the car keys."[107] Meanwhile, Bell contends

---

[105]    *See* City's Motion Opposition 9:9-10:15.

[106]    *See generally* Bell's Motion; Plaintiffs' Motion.

[107]    Plaintiffs' Motion 20:6-14; *see also* Bell's Motion Opposition 14:23-24 (similar).

that he used a soft-hands hold that was minimally intrusive and that, to the extent that he grabbed Mariah's hands or forearms, his contact with her was limited and reasonable.[108]

Applying the Ninth Circuit's three-part excessive force test, the Court agrees with Bell that no reasonable juror could find that he used excessive force against Mariah. First, with respect to the degree of intrusion, Mariah overstates how aggressively Bell pursued her. Although Mariah maintains that Bell "rushed at," "surprise-attacked," and assaulted her,[109] the video recording of the interaction shows Bell walking toward Mariah slowly while he searched the ground for Gadison's keys, which necessarily provided warning to Mariah that Bell sought the keys that she held in her hand.[110] Then, around the same time that Mariah began to retreat with the keys in her hand—and immediately after she falsely asserted that the keys were in Gadison's vehicle—Bell followed Mariah and reached for the keys.[111] No reasonable juror could interpret those actions as a "surprise attack" or an "assault."

Similarly, although Mariah characterizes Bell's actions as an aggressive attack, there is no evidence that Mariah experienced significant pain or injury as a result of Bell's actions. Specifically, Mariah argues that she "experienced bruising on her arms, lacerations on her finger, arms, and legs, and a possible dislocation of her finger,"[112] but those facts appear nowhere in the Joint Statement or the Joint Exhibit. Instead, Mariah testified during a deposition that she felt a "sharp pain from [her] finger" when Bell took the keys and that she did not otherwise experience any pain or injuries.[113] Under Ninth Circuit precedents, that pain does not constitute a significant injury. *See, e.g.*, *Williamson*, 23 F.4th at 1152 (concluding that "a sprained wrist, mild swelling, and a torn rotator cuff" were "minimal" injuries).

Second, Mariah contends that there was no governmental interest in taking the keys from her by force because she neither disobeyed a police order nor received a chance to comply with an officer's order.[114] In general, Mariah is correct that "[w]here officers are presented with circumstances indicating that no crime was committed" or that no orders were disobeyed, the government's interest in using force is "necessarily diminished." *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1025 (9th Cir. 2015). But

---

[108]    *See* Bell's Motion 9:11-10:2.

[109]    Bell's Motion Opposition 14:23-24 & 21:12-13.

[110]    Bailey Video 0:00:28-34; Gomez Video 0:00:28-36; *see also* Joint Statement 183.

[111]    Bailey Video 0:00:28-34; Gomez Video 0:00:28-36.

[112]    Plaintiffs' Motion 20:12-14.

[113]    Joint Exhibit, Ex. 9 (the "Mariah Deposition, Vol. I") [ECF No. 106] 98:14 & 99:12-17.

[114]    *See* Bell's Motion Opposition 15:3-12.

Mariah heard Bell repeatedly instruct Gadison to leave the keys in the vehicle, and she watched Gadison violate those instructions by instead throwing his keys out the window in her direction. It would be unreasonable to conclude that, when Mariah received the keys, the officers' instructions no longer applied. *See Puente v. City of Phoenix*, 123 F.4th 1035, 1058 (9th Cir. 2024) (noting that earlier warnings can provide notice of the later use of force). Moreover, because Mariah falsely informed the officers that the keys were still in Gadison's vehicle before she retreated toward her garage with the keys in her hand, no reasonable juror could conclude that Mariah was deprived of an opportunity to give the keys to the officers or that she was unaware that the officers sought the keys.

Mariah also argues that Bell had no interest in taking the keys from her because the keys were her personal property and that Bell could not lawfully seize Mariah's property without a warrant.[115] Mariah's only support for that argument, however, is *United States v. Baker*, 58 F.4th 1109 (9th Cir. 2023). In that case, the Ninth Circuit held that an officer could not "remove[] a key visibly hanging from [the defendant's] belt loop" during a *Terry* stop in order later to "search[] for a car that corresponded to it." *Id.* at 1117. Those facts are plainly inapplicable here. In seeking and recovering the keys necessary to conduct an inventory search and to turn off the car alarm, Bell was not co-opting an unrelated, "carefully limited search" in the hope of later finding the car to which those keys belonged. *Id.* To the contrary, Bell sought the keys for a specific, lawful purpose.

Third, balancing the minimal intrusion of Mariah's rights against Bell's interest in obtaining Gadison's keys, the Court is satisfied that no reasonable juror could find that Bell used excessive force against Mariah. In arguing otherwise, Mariah relies heavily upon *Young v. County of Los Angeles*, 655 F.3d 1156 (9th Cir. 2011). As Mariah notes, in that case the Ninth Circuit held that "it is rarely necessary, if ever, for a police officer to employ substantial force without warning against an individual who is suspected only of minor offenses, is not resisting arrest, and, most important, does not pose any apparent threat to officer or public safety." *Id.* at 1166–67. Mariah contends that, based upon that holding, Mariah's conduct was not severe enough to justify Bell's use of force.

Mariah ignores that the facts of *Young* are markedly different than those present here. In *Young*, a police officer stopped the plaintiff, who was driving to the gym and "enjoying a snack of broccoli and tomato," for minor traffic violations. *Id.* at 1159. After being pulled over, the plaintiff exited his vehicle, delivered his registration to the officer, and walked past his truck to sit on the curb and enjoy his tasty treat. *See id.* Fearing that the plaintiff might "throw the broccoli at him," the officer approached the plaintiff from behind and pepper sprayed him. *Id.* at 1159–60 (alterations adopted). Then, when the plaintiff stood up and backed away from the noxious vapor, the officer drew his baton and

---

[115]    *See id.* at 15:13-21; Plaintiffs' Motion 12:18-20.

struck the plaintiff several times before handcuffing the plaintiff, the officer placed his knee on the plaintiff's back, and he continued to strike the plaintiff with his baton. *Id.* at 1160. Those facts do not at all resemble the circumstances of this case.

Finally, even if Bell did violate Mariah's right to be free from excessive force, Mariah has not met her burden to demonstrate that the violation was clearly established at the time of the incident. Indeed, despite having at least four opportunities to do so, Mariah failed to address the issues of qualified immunity or clearly established law with respect to Bell's actions.[116] Thus, Mariah has not established that the constitutionality of Bell's actions was "beyond debate." *White v. Pauly*, 580 U.S. 73, 79 (2017) (*per curiam*).

Accordingly, the Court concludes that Bell is entitled to qualified immunity and summary judgment in his favor with respect to Mariah's excessive force claim.

### ii.    By Sobaszek

Sobaszek argues that he is entitled to qualified immunity and summary judgment on Mariah's excessive force claim because he did not violate Mariah's constitutional right to be free from excessive force and because, even if he did, Mariah has not established that the violation was clearly established. The Court agrees.

As a threshold matter, Mariah has made several conflicting statements about her arrest. For example, Mariah asserts in various briefs that "Sobaszeck and at least two other officers piled their knees into [Mariah's] back, while Sobaszeck applied pressure to [Mariah's] neck, and restricted her airway while her hands were behind her back."[117] But Mariah did not provide fact citations in support of those allegations, and the Court is unable to locate any support for those assertions in the Joint Exhibit. Instead, Mariah testified at one point that she "believe[d]" that Sobaszek "grabbed [her] hair . . . and bashed [her] head onto the ground"[118] but that she did not remember whether the officers had other physical contact with her because she "blacked out and came back to with someone hooking their fingers under [her] jaw."[119] Meanwhile, in a later deposition, Mariah testified that she was "dragged from the front yard to the garage area" after being

---

[116]    *See generally* Plaintiffs' Motion; Bell's Motion Opposition; Plaintiffs' Reply; Plaintiffs' Supplemental Brief.

[117]    *See, e.g.*, City's Motion Opposition 15:11-14.

[118]    *See* Mariah Deposition, Vol. I 121:17–122:1.

[119]    *Id.* at 123:14-20.

bashed into the ground, but she did not indicate which officer purportedly dragged her or
bashed her into the ground.[120]

Because Mariah has provided various contradictory accounts of the officers'
actions—and because she has not established which of those actions, if any, should be
attributed to Sobaszek—the Court is disinclined to credit her testimony. *See Kennedy v.
Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991) (noting that a party may not create
an issue of fact through their own contradictory testimony). But even taking all of
Mariah's allegations as true, no reasonable juror could find that Sobaszek used excessive
force in detaining her. Rather, because the loose dogs and the potential for additional dog
bites necessarily posed a serious threat to the safety of the officers and the security of
their surroundings, and because Mariah repeatedly disobeyed the officers' commands and
sought to prevent them from effecting Gadison's arrest, the officers had a strong
governmental interest in detaining Mariah. *See Ames v. King Cnty.*, 846 F.3d 340, 349
(9th Cir. 2017) (noting that it is reasonable to use force when conducting an arrest when
the safety of a third party is at risk). That governmental interest outweighed the minor or
moderate force that the officers used to detain her.

Moreover, Mariah has not satisfied her burden to show that Sobaszek committed a
clearly established violation of her constitutional rights. In arguing otherwise, Mariah
relies upon a single Ninth Circuit case—*Blankenhorn v. County of Orange*, 485 F.3d 463,
478 (9th Cir. 2007). In *Blankenhorn*, the plaintiff was "gang tackle[d]" by three officers
merely for being present at a mall. *Id.* at 478. The plaintiff had not taken any suspicious
or sudden action that would have suggested that he posed a danger to the officers, yet the
officers "placed a knee behind [the plaintiff's] neck and pressed his face into the ground"
and "punch[ed]" the plaintiff "in the head and twice more in the side" after he was
"already on the ground." *Id.* at 470. The scene at the Herefords' residence was far more
chaotic, and Mariah was more culpable. Before Sobaszek used any force against her,
Mariah attempted to kick Gadison's car door shut on the officers and misled the officers
about whether she held Gadison's keys. Mariah's dog also bit Bell twice. Thus, the
"unlawfulness of [Sobaszek's] conduct 'does not follow immediately from'" the facts
and holding of *Blankenhorn*, and Sobaszek is entitled to qualified immunity. *Wesby*, 583
U.S. at 64.

Accordingly, the Court concludes that Sobaszek is entitled to qualified immunity
and summary judgment in his favor on Mariah's excessive force claim.

---

[120]    *See* Joint Exhibit, Ex. 43 (the "Mariah Deposition, Vol. II") [ECF No. 106] 218:10–14.

### c.    Against Monett

#### i.    By Bell

Next, Bell moves for summary judgment on Monett's excessive force claim against him. According to Monett, Bell is not entitled to summary judgment in his favor on that claim because a reasonable jury could conclude that his "use of force to shove Monett[] despite her compliance with his orders" was unreasonable.[121] The Court disagrees.

To start, there is no evidence that Bell touched Monett, let alone that he shoved her. None of the videos shows that Bell had any contact with Monett, and neither Mariah nor Monett testified that Bell shoved or pushed or pushed Monett.[122] Gadison, meanwhile, testified that he did not see Bell "have any physical contact with Monett."[123] Thus, the Court is unpersuaded that there is any basis on which Monett may assert an excessive force claim against Bell.

Next, even assuming that Bell shoved Monett, no reasonable juror could conclude that he violated her constitutional rights by doing so. According to Monett, Bell pushed her while she was recording him as he conducted Gadison's arrest, which means that Monett stood at most an arms' length from Bell as he tried to detain Gadison. There is, of course, a strong governmental interest in keeping bystanders out of the immediate area of an arrest. *See, e.g.*, *Valdez v. Rosenbaum*, 302 F.3d 1039, 1046 (9th Cir. 2002) ("The government has a legitimate interest in ensuring the safety of police officers when executing arrests."). That interest outweighs the minimal use of force that Bell may have employed to push Monett back.

Finally, even if Bell violated Monett's right to be free of excessive force, Monett has not argued—let alone provided caselaw to support any such argument—that the unconstitutionality of Bell's conduct was clearly established.[124]

Accordingly, the Court concludes that Bell is entitled to qualified immunity and summary judgment in his favor with respect to Plaintiffs' claim that he used excessive force on Monett.

---

[121]    Bell's Motion Opposition 12:12–14.

[122]    *See generally* Joint Exhibit, Ex. 10 (the "Monett Deposition") [ECF No. 106]; *see also* Mariah Deposition, Vols. I & II.

[123]    *See id.*, Gadison Deposition 234:18–20.

[124]    *See generally* Bell's Motion Opposition.

### ii.    By Sobaszek

Sobaszek argues that he is entitled to summary judgment on Monett's excessive force claim because no reasonable juror could conclude that he used excessive force while detaining Monett and because Monett has not shown that Sobaszek violated clearly established law.  The Court agrees.

As an initial matter, it is difficult to analyze the amount of force that Sobaszek used against Monett because Monett has offered several conflicting versions of her own arrest.  For example, Monett sometimes contends that she was not ordered to back up until she was already being placed under arrest,[125] but at other times, she asserts that Bell "walked around the driver's side door to physically push Mariah and Monett backwards, while yelling 'back up' and threatening to take them both to jail for obstructing justice."[126]  Similarly, Monett argues that Sobaszek "grabbed and groped at her waist, hips, and pelvis in a mock search of her body,"[127] but Monett testified during her deposition that Sobaszek merely "searched [her] with open hands, while a female officer was walking by."[128]  Monett also contends that Mariah recorded "the officers as they manhandled" Monett,[129] but that recording does not appear to exist.  And finally, although Monett maintains that a dispute of fact exists regarding whether she stiffened her arm or resisted arrest, Monett provides no evidence to refute Sobaszek's contention that she did in fact take those actions.  *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001) ("Aside from [the plaintiff's] conclusory statement that she 'did not resist arrest in any way,' [she] does not refute [the officer's] report that she stiffened her arm and attempted to pull it away, which was impermissible regardless of whether [the officer] had probable cause to arrest her.").

In any event, to the extent that any of those inconsistencies constitutes disputed facts, those disputes are immaterial.  Even taking all of Monett's allegations as true, Monett does not contend that Sobaszek struck her, threw her to the ground, or used any techniques or weapons "for the purpose of inflicting pain on her."  *Williamson v. City of Nat'l City*, 23 F.4th 1146, 1152 (9th Cir. 2022).  And Monett's injuries—reinjury to her hands and wrists, as well as some pain in her shoulder and perhaps the loss of a tooth— were relatively minor.  *See Johnson v. Cnty. of Los Angeles*, 340 F.3d 787, 792–93 (9th Cir. 2003) (noting that "a sprained wrist, mild swelling, and a torn rotator cuff" were not

---

[125]    *See* City's Motion Opposition 5:8-10.

[126]    *Id.* at 4:28-5:2.

[127]    *Id.* at 5:13-14.

[128]    *See* Monett Deposition 143:18-144:3.

[129]    *See* City's Motion Opposition 5:15-16.

severe).  Thus, at most, Sobaszek used only minor force and minimally intruded on Monett's rights.  *See id.*

Next, the governmental interest in detaining Monett "was not nonexistent."  *Id.* at 1153.  The Ninth Circuit has held that, even when "[i]t is undisputed that [a plaintiff's] crime was minor, that she posed no threat to anyone, and that she was not actively resisting arrest," there is some governmental interest in maintaining order.  *Id.*  And here, there is no material dispute regarding whether Monett complied with the officers' orders—she did not.  Monett's disobedience, combined with the officers' need to maintain order, warrants the use of some force to detain Monett.  *See Arpin*, 261 F.3d at 921.  Similarly, although Monett characterizes Sobaszek's search of her person as excessive or unnecessary, a search itself does not constitute unlawful force.  To the contrary, a police officer is entitled to "conduct a warrantless search of a person who is arrested, and of his surrounding area, when the search is incident to the arrest."  *United States v. Smith*, 389 F.3d 944, 950–51 (9th Cir. 2004).

Balancing the use of force against the governmental interest, the Court concludes that no reasonable juror could find that Sobaszek violated Monett's constitutional rights.  Sobaszek used only minor force while attempting to detain Monett, and, in view of the chaotic surroundings and Monett's repeated disobedience, some governmental interest existed in using that force.  Therefore, Sobaszek did not violate Monett's right to be free of excessive force and, as such, he is entitled to summary judgment in his favor.

Finally, even if Sobaszek had violated Monett's right to be free of excessive force, Sobaszek is nevertheless entitled to qualified immunity because Monett has not shown that the violation was clearly established.  Monett contends that "[m]ultiple cases establish that Sobaszek's arrest and subsequent search of Monett under the circumstances violated 'clearly established' law," but she does not cite any cases sufficient clearly to establish that principle.[130]  Specifically, Monett relies upon *Young*, 655 F.3d at 1170; *Lewis*, 415 U.S. at 134; *Quiroga*, 16 Cal. App. 4th at 966; and *Bernal*, 73 F.4th at 696.  As explained above, none of those cases involve factual circumstances close enough to those at issue here to have put Sobaszek on notice that his conduct was illegal.

Accordingly, the Court concludes that Sobaszek is entitled to summary judgment in his favor on Monett's excessive force claim.

In summary, Bell's Motion and the City's Motion are **GRANTED** with respect to Plaintiffs' excessive force claim.  Bell and Sobaszek are each entitled to summary judgment in their favor on Plaintiffs' eighth claim for relief.

---

[130]    *Id.* at 17:27–28.

### 3.    First Amendment Retaliation

To prevail on a claim for First Amendment retaliation, "a plaintiff must prove: (1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action." *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010). When a plaintiff asserts a claim for retaliatory arrest, however, the plaintiff must also "plead and prove the absence of probable cause," unless the crime is one for which officers "typically exercise their discretion not" to conduct arrests. *Ballentine v. Tucker*, 28 F.4th 54, 62 (9th Cir. 2022).

### a.    By Bell

Bell argues that he is entitled to summary judgment on Monett and Mariah's claim for First Amendment retaliation because there is no material dispute regarding whether Monett and Mariah's First Amendment activity motivated Bell to arrest Monett and Mariah.[131]  The Court agrees.

As an initial matter, Monett and Mariah's First Amendment claim necessarily fails because, as discussed above, both Monett and Mariah's arrests were supported by probable cause. *See id.* But even assuming that Monett and Mariah were arrested without probable cause, there is no material dispute regarding whether Monett and Mariah's First Amendment activity was a "substantial" cause of the actions taken against them. *See Blair*, 608 F.3d at 543.

Specifically, Mariah and Monett argue that, because they were filming Bell, he could not arrest them without violating the First Amendment.[132]  But First Amendment activity does not, in and of itself, suffice to make out a claim for retaliation. *See Ford v. City of Yakima*, 706 F.3d 1188, 1195 (9th Cir. 2013). Rather, to succeed on a claim for retaliatory arrest, a plaintiff must demonstrate that his or her protected First Amendment activity was a "but-for cause" of his or her arrest. *Ballentine*, 28 F.4th at 65. And here, nothing in the record suggests that Bell—or any officer—harbored any hostility on account of Monett or Mariah's First Amendment activity. Bell never ordered Monett or Mariah to stop filming, and, although he ordered Monett and Mariah to back up while Sobaszek was attempting to detain Gadison, Bell did not express disapproval of Monett or Mariah's decision to film Gadison's arrest, deter them from filming, or interfere with their activities. Similarly, although Monett and Mariah contend that their "verbal

---

[131]    *See* Bell's Motion 12:18-23.

[132]    *See* Bell's Motion Opposition 21:18-21.

objections were specifically relied upon by Defendants in arguing probable cause for Plaintiffs' arrests,"[133] Monett and Mariah did not cite evidence in support of that contention, and the Court is unable to locate any such evidence in the record.

Accordingly, the Court concludes that Bell is entitled to summary judgment on Monett and Mariah's claim for First Amendment retaliation.

### b.     By Sobaszek

Sobaszek argues that he is entitled to summary judgment on Monett and Mariah's First Amendment retaliation claim because neither Monett nor Mariah can show an absence of probable cause for their arrests.[134]  Sobaszek also asserts that he is entitled to qualified immunity because Monett and Mariah cannot identify any case that would have made it clear to a reasonable officer that arresting Monett and Mariah violated the First Amendment.[135]

The Court agrees that Monett and Mariah's First Amendment claim fails because probable cause existed to support their arrests.  *See Ballentine*, 28 F.4th at 62. Additionally, Monett and Mariah have not argued that the unconstitutionality of Sobaszek's conduct was clearly established, and, in support of their argument that Sobaszek committed a constitutional violation, they provided only general authorities regarding the First Amendment right to film matters of public interest.  *See, e.g.*, *Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995) (noting that there is a "First Amendment right to film matters of public interest").

Accordingly, the Court concludes that Sobaszek is entitled to qualified immunity and summary judgment in his favor on Monett and Mariah's claim for First Amendment retaliation.

In summary, Bell's Motion and the City's Motion are **GRANTED** with respect to Plaintiffs' First Amendment claim.  Bell and Sobaszek are entitled to summary judgment in their favor with respect to Plaintiffs' eleventh claim for relief.

### 4.     *Monell* Liability

To assert a claim for municipal liability under § 1983, a plaintiff "must prove that (1) he was deprived of a constitutional right; (2) the municipality had a policy; (3) the policy amounted to deliberate indifference to [the plaintiff's] constitutional right; and

---

[133]   *Id.* at 21:23-24.

[134]   *See* City's Motion 30:10-13.

[135]   *Id.* at 30:18-20.

(4) the policy was the moving force behind the constitutional violation." *Lockett v. Cnty. of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020). Thus, *Monell* claims "require a plaintiff to show an underlying constitutional violation," and the determination that no such violation occurred precludes *Monell* liability. *Id.*

Because the Court concludes that each of Plaintiffs' individual claims fail, Plaintiffs' *Monell* claim against the City necessarily also fails. *See id.* But even if Plaintiffs had established that any constitutional violation occurred, Plaintiffs have not identified any City practice, custom, or policy that could have caused such a violation.[136] Indeed, Plaintiffs concede that "[n]owhere in the [Joint Statement] submitted by the parties are there material facts regarding Defendants' policies, practices, customs, or response to this incident in particular."[137]

Accordingly, the City's Motion is **GRANTED** with respect to Plaintiffs' *Monell* claim, and the City is entitled to summary judgment in its favor on Plaintiffs' ninth claim for relief.

## B.    State Law Claims

In addition to their § 1983 claims, Plaintiffs assert the following state law claims against Sobaszek and the City:

- violation of the Bane Act;
- violation of the Ralph Act;
- assault and battery;
- intentional infliction of emotional distress;
- false arrest;
- trespass to chattels; and
- negligence.

Sobaszek and the City move for summary judgment on each of those claims.

### 1.    The Bane Act

To pursue a claim for relief under the Bane Act, a plaintiff must show that his or her constitutional rights were interfered with "by threat, intimidation, or coercion." Cal. Civ. Code § 52.1(b). Qualified immunity is not available under the Bane Act, but unlike a § 1983 claim, a Bane Act claim requires the plaintiff to prove that the defendant acted with specific intent to interfere with the plaintiff's rights. *See Reese v. Cnty. of*

---

[136]    *See* City's Motion Opposition 21:25-23:2.

[137]    *See id.* at 22:22-26.

*Sacramento*, 888 F.3d 1030, 1044 (9th Cir. 2018).  Specific intent may be established using evidence that the officer acted with reckless disregard for the plaintiff's rights.  *See id.* at 1045.

Because there is no reasonable dispute regarding whether Sobaszek violated Plaintiffs' constitutional rights, Plaintiffs' Bane Act claim necessarily fails.  *See id.*  But Plaintiffs' Bane Act claim also fails because Plaintiffs have not identified any evidence that would allow a jury to conclude that Sobaszek acted with reckless disregard of their constitutional rights.  Rather, Plaintiffs offer only the passing and conclusory assertion that "[a] reasonable jury could find that Defendants acted with reckless disregard,"[138] without any explanation of how or why a reasonable jury could make that finding.[139] Accordingly, the City and Sobaszek are entitled to summary judgment in their favor on Plaintiffs' Bane Act claim.  The City's Motion is **GRANTED** with respect to Plaintiffs' first claim for relief.

### 2.    The Ralph Act

The Ralph Act provides that all persons "have the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property because of political affiliation, or on account of any characteristic," including "sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, [or] sexual orientation."  Cal. Civ. Code §§ 51 & 51.7.  Thus, to prove a claim under the Ralph Act, a plaintiff must prove that "(1) Defendants committed or threatened violent acts against Plaintiffs; (2) Defendants were motivated by their perception of Plaintiffs' [protected trait]; (3) Plaintiffs were harmed; and (4) Defendants' conduct was a substantial factor in causing Plaintiffs' harm."  *Campbell v. Filed Ent., Inc.*, 75 F. Supp. 3d 1193, 1205 (N.D. Cal. 2014).  Because the Ralph Act was adopted to curb "discriminatory and pernicious conduct often referred to as hate crimes," the key element of a Ralph Act claim is that the defendant was "motivated by bigotry and bias."  *D.C. v. Harvard-Westlake Sch.*, 176 Cal. App. 4th 836, 858–59 (2009).

Although Plaintiffs argue that "[a] reasonable juror could find that race motivated the officers' use of force," Plaintiffs provide no specific facts to support that argument.[140] Instead, Plaintiffs rely upon general facts, such as the officers' decision "to stop Gadison, a black man driving a newer car in a predominantly African American neighborhood"[141]

---

[138]    *Id.* at 23:21.

[139]    *See id.* at 23:3–25.

[140]    *See id.* at 20:26-27.

[141]    *Id.* at 19:25-26.

or their attempts "repeatedly [to seek] Gadison's consent to a vehicle search."[142] Plaintiffs speculate that those facts could "be relevant to the question whether the officer acted with a racially discriminatory intent,"[143] but "[c]onclusory allegations that Defendants' conduct was due to Plaintiff's race are insufficient to state a Ralph Act claim," *Garcia v. Diaz*, 2021 WL 4775638, at *12 (C.D. Cal. July 14, 2021), let alone to survive summary judgment. Similarly, Plaintiffs contend that the officers made disparaging comments after the arrests, including statements in which the officers referred to Plaintiffs as "stupid people" or expressed their feelings that the altercation was "so dumb."[144] But Plaintiffs have not provided citations to any such comments in the record, nor have Plaintiffs attributed those comments to any particular officer, nor have they explained how those comments relate to any protected trait.[145] Those comments are thus insufficient to raise a triable issue of fact with respect to Plaintiffs' Ralph Act claim.

Accordingly, the Court concludes that Sobaszek and the City are entitled to summary judgment in their favor on Plaintiffs' Ralph Act claim. The City's Motion is therefore **GRANTED** with respect to Plaintiffs' second claim for relief.

### 3. Assault and Battery

Under California law, a plaintiff who asserts a claim for assault or battery against a police officer "must prove unreasonable force as an element of the tort." *Edson v. City of Anaheim*, 63 Cal. App. 4th 1269, 1272 (1998). In other words, "a prima facie battery is not established unless and until [the] plaintiff proves unreasonable force was used." *Id.* Because the Court concludes that there is no material dispute regarding whether Sobaszek used unreasonable force on Plaintiffs, the Court also concludes that Sobaszek and the City are entitled to summary judgment in their favor on Plaintiffs' assault and battery claim. The City's Motion is therefore **GRANTED** with respect to Plaintiffs' third claim for relief.

### 4. Intentional Infliction of Emotional Distress

"A cause of action for intentional infliction of emotional distress exists when there is (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of

---

[142]  *Id.* at 20:19-21.

[143]  *Id.* at 20:1-3.

[144]  *Id.* at 20:25-26.

[145]  *See generally id.*; Joint Statement.

the emotional distress by the defendant's outrageous conduct." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009) (citations and quotations omitted). Conduct is not "outrageous" unless it is "so extreme as to exceed all bounds of that usually tolerated in a civilized society." *Johnson v. Ralphs Grocery Co.*, 204 Cal. App. 4th 1097, 1108 (2012). "Severe emotional distress means emotional distress of such substantial quality or enduring quality that no reasonable person in civilized society should be expected to endure it." *Hughes*, 46 Cal. 4th at 1051 (alterations adopted).

Plaintiffs argue that a reasonable jury could find that Sobaszek acted outrageously based upon the evidence that he "engaged in an unlawful seizure and excessive force"[146] and because "Gadison and Monett had to listen on in terror as Mariah and their children/grandchildren, respectively, wailed in pain and fear."[147] But as California courts have recognized, a police defendant is "not similarly situated" to an ordinary tort defendant. *Edson*, 63 Cal. App. 4th at 1273. Thus, in evaluating a tort claim against a police officer, a court should "take[] into account the special situation of the police defendant," particularly with respect to the officer's use of force. *Id.* Here, in view of Sobaszek's role as a police officer and the minimal force that he used to conduct lawful arrests, no reasonable juror could find that Sobaszek's conduct fell outside the "bounds of that usually tolerated in a civilized society." *Johnson*, 204 Cal. App. 4th at 1108.

Accordingly, the Court concludes that Sobaszek and the City are entitled to summary judgment in their favor with respect to Plaintiffs' claim for intentional infliction of emotional distress. The City's Motion is therefore **GRANTED** with respect to Plaintiffs' fourth claim for relief.

### 5.    False Arrest

To state a claim for false arrest or false imprisonment, a plaintiff must establish "(1) the nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time, however brief." *Young*, 655 F.3d at 1169. "California state law prohibits civil liability for false arrest where an arresting officer had reasonable cause to believe the arrest was lawful." *Garcia v. Cnty. of Merced*, 639 F.3d 1206, 1213 (9th Cir. 2011).

Because the Court concludes that Sobaszek had reasonable cause to believe that each of Plaintiffs' arrests was lawful, Plaintiffs' false arrest claim necessarily fails. Accordingly, the Court concludes that Sobaszek and the City are entitled to summary

---

[146]    City's Motion Opposition 24:1-2.

[147]    *Id.* at 24:23-25.

judgment in their favor with respect to Plaintiffs' claim for false arrest.  The City's Motion is therefore **GRANTED** with respect to Plaintiffs' fifth claim for relief.

### 6.    Trespass to Chattels

"Under California law, trespass to chattels lies where an intentional interference with the possession of personal property has proximately caused injury." *Plotnik v. Meihaus*, 208 Cal. App. 4th 1590, 1606 (2012) (citation and emphasis omitted).  "Dogs are considered personal property." *Id.*  Thus, a plaintiff may recover economic and emotional distress damages "due to injuries his animal received at the hands of another." *Id.* (brackets omitted).  But "one is privileged to commit an act which would otherwise be a trespass to or a conversion of a chattel in the possession of another, for the purpose of defending himself or a third person against the other" if "the actor reasonably believes that such other person intends to cause a confinement or a harmful or offensive contact to the actor, or that such invasion of his interests is reasonably probable, and the actor reasonably believes that the apprehended harm can be safely prevented only by the infliction of such harm upon the other." *Church of Scientology v. Armstrong*, 232 Cal. App. 3d 1060, 1072 (1991).

Plaintiffs' trespass-to-chattels claim fails for two reasons.  First, it undisputed that "Sobaszek did not abuse or mistreat [Plaintiffs'] dogs,"[148] so there was no injury to the dogs and thus no basis on which Plaintiffs could recover damages.  And second, the purported trespass did not occur until after one of Plaintiffs' dogs bit Bell twice in the leg.[149]  There is thus no question that the officers "reasonably believe[d]" that the dogs might harm the officers, *Armstrong*, 232 Cal. App. 3d at 1072, and Plaintiffs do not meaningfully argue otherwise.  Rather, Plaintiffs attempt to shift the blame for the dog bite onto the officers by asserting that the dogs were "tethered to the ground until an officer removed one of the dogs . . . from his chain."[150]  But Plaintiffs offer no support for that accusation,[151] and based upon the video footage of the incident, it appears that it would have been impossible for an officer to untether the dog that bit Bell because no officer was near the dog before the bite occurred.[152]

Accordingly, the Court concludes that Sobaszek and the City are entitled to summary judgment in their favor with respect to Plaintiffs' claim for trespass to chattels.

---

[148]    Joint Statement No. 279.

[149]    *Id.* at No. 190.

[150]    City's Motion Opposition 25:20-23.

[151]    *See id.* at 25:20-27.

[152]    *See* Bailey Video 00:30-37; Gomez Video 00:40-45.

The City's Motion is therefore **GRANTED** with respect to Plaintiffs' sixth claim for relief.

### 7.    Negligence

To prevail on a negligence claim, a plaintiff "must show that the defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury." *Hayes v. Cnty. of San Diego*, 57 Cal. 4th 622, 629 (2013). Additionally, a plaintiff must identify his or her injury, meaning the "primary right" that the defendant violated, and the duty to which that injury "corresponds." *See id.* at 631. The use of excessive force may constitute a violation of a peace officer's "duty to act reasonably" when using force, but the "reasonableness of a peace officer's conduct must be determined in light of the totality of the circumstances." *Id.*

Plaintiffs' negligence claim appears to be premised entirely upon their allegations that Bell and Sobaszek arrested Plaintiffs without probable cause and used excessive force against Plaintiffs.[153] As discussed above, there is no genuine dispute regarding whether Sobaszek used excessive force during his interactions with Plaintiffs—he did not. Accordingly, the Court concludes that Sobaszek and the City are entitled to summary judgment in their favor with respect to Plaintiffs' negligence claim. The City's Motion is therefore **GRANTED** with respect to Plaintiffs' seventh claim for relief.

## VII.  DISPOSITION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1.    Bell's Motion [ECF No. 110] is **GRANTED**.

2.    The City's Motion [ECF No. 108] is **GRANTED**.

3.    Plaintiffs' Motion [ECF No. 105] is **DENIED**.

---

[153]    *See* City's Motion Opposition 24:13-14 ("[A] reasonable jury could conclude that Defendants breached their duty to act reasonably based on their use of excessive force.").

4.    Judgment shall issue accordingly.

**IT IS SO ORDERED.**

Dated:_____July 17, 2025_____

John W. Holcomb
UNITED STATES DISTRICT JUDGE